# Staunton ·

## Sutherland and Others v. Gent.

### September 7, 1914.

1. Ejectment—*Reservations Within Exterior Boundaries—Burden of Proof—Code* (1904) *Sec. 2734a.*—Where there has been a reservation of land within the exterior boundaries of the land granted, but it is not sufficiently described to enable the same to be readily and accurately located by a competent surveyor, and an action of ejectment is brought by the owner of the larger tract to recover land within his exterior boundaries, the practical effect of the statute (section 2734a Code 1904), in a case to which it applies, is to cast upon the defendant the burden of proving that the land in controversy lies within the limits of the reservation.

2. Boundaries—*Ancient Boundaries—Corners—Hearsay Evidence.*— The location of a corner in a disputed boundary cannot be shown by proving that twenty years before it had been pointed out to the witness by one since deceased, who was the agent of the owner and also a surveyor, when there was no corner tree standing on the spot at the time nor other monument to mark the corner, and it is not shown that the declarant had identified the corner in question or other lines or corners of the tract in controversy, or adjoining tracts by actual survey, nor upon what knowledge or information the declarations of declarant was founded. While hearsay evidence as to particular facts may, under proper restrictions, be received upon a question of ancient boundaries, such evidence should be carefully watched because from its very character it may, in many or most cases, be utterly impossible to meet or disprove it. It should not be carried further than required by the absolute necessities of the case.

3. Ejectment—*Boundaries—Location—Expert Testimony.*—In an action of ejectment, the question whether the land in controversy is within the boundaries claimed by the plaintiff's declaration is a question of fact upon which witnesses may state their knowledge, but upon which experts may not express

opinions. On such questions expert testimony is not admissible.

4. DEEDS—*Blank Christian Name—Parol Evidence to Supply.*—Where land was conveyed to "Jesse Beam and ————— Nichols," it was competent to prove by Beam that he and A. B. Nichols bought the land jointly, and that "witness received the deed and turned it over to A. B. Nichols, who still has it."

5. EVIDENCE—*Record of Another Suit—Parts to Be Introduced.*—It is not necessary in a civil suit to introduce the whole record of another case in evidence, but only such parts of it as relate to the matters in issue.

6. APPEAL AND ERROR—*Evidence—Order of Introduction.*—The order of introduction of evidence is always in the discretion of the trial court, and does not constitute reversible error unless such discretion has been abused to the prejudice of the other party.

7. EJECTMENT—*Several Defendants—Prior Recovery by Third Person Against One—Admissibility of Record.*—In an action of ejectment against several defendants who claim title to the land in controversy, it is competent, as against one of them, to introduce the record of a prior action of ejectment against him by a third person for a part of the land now in controversy, provided it is shown that the plaintiff in that action took possession under his judgment; the record being admissible against that defendant, at least for the purpose of proving a breach in the continuity of his possession.

Error to a judgment of the Circuit Court of Russell county in an action of ejectment. Judgment for the plaintiff. Defendants assign error.

*Reversed.*

The opinion states the case.

*W. W. Bird* and *Sutherland & Sutherland,* for the plaintiffs in error.

*Finney & Wilson,* for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

The defendant in error, Gent, filed his declaration in

ejectment in the circuit court against the plaintiffs in error, W. H. Sutherland, Johnson Sutherland, Morgan Sutherland and George Ramey, to recover 267¾ acres of land situated in Russell county. The case was tried at January term, 1913, and resulted in a verdict and judgment for the plaintiff. Numerous exceptions were taken by the defendants to rulings of the court on evidence and instructions, and finally to the refusal to set aside the verdict as contrary to the law and the evidence.

The plaintiff to connect his title with the Commonwealth put in evidence a deed from Richard Smith to the Warders, under date May 29, 1806, embracing a large boundary of land in Russell county. The deed recites that the entire tract was divided into various lots of 10,000 acres, 5,000 acres, and other quantities of land, each, for which separate patents had been taken out by the grantor, all of which were recorded in the land office. These various parcels amounted in the aggregate to 384,723 acres, more or less. The deed expressly reserves from the operation of the grant to the Warders a boundary of 50,000 acres sold and conveyed by the grantor to P. Francis De Tu Beuf, and also other lands referred to therein.

In *Reusens* v. *Lawson*, 91 Va. 226, 21 S. E. 347, the following important rule of evidence is enunciated: "Where the title papers of the plaintiff in ejectment disclose the fact that the exterior boundaries of the survey upon which a grant or deed to one under whom he claims is founded include lands which have been excepted from the operation of the grant, or lands which have been aliened since the grant was issued and which have been excepted from the operation of the deed of his grantor, it is incumbent on the plaintiff to show that the lands in controversy are not within the excepted or aliened lands."

This principle has been modified by statute (section

50

2734a of the Code) to the extent that when the boundaries of the reserved land are not sufficiently described on the face of the grant or other conveyance, ''or by reference on the face thereof to other grants or conveyances of public record, containing such sufficient description by courses and distances, natural boundaries or landmarks, or otherwise, of such reserved land, as will enable the same to be readily and accurately located by a competent surveyor, the plaintiff shall be entitled to recover so much of said land within said exterior lines as does not appear by a preponderance of the evidence to be within the limits of any such reservation, and as he would otherwise be entitled to recover if such grant or other conveyance had contained no such reservation; provided that this act shall not apply when it shall appear from the evidence that the defendant is in possession of such reserved land under claim of title thereto.''

In a case to which it applies, the practical effect of the foregoing qualification is to cast upon a defendant the burden of proving that the land in controversy lies within the limits of the reservation. This case, however, does not fall within either the letter or spirit of the statute. The theory of the plaintiff is that the land in dispute is part of block 27 of 5,000 acres of the Richard Smith survey, now known as the Warder land. Block 27 was granted by the Commonwealth to Smith by patent dated July 4, 1787, and is of record in the land office, the patent giving the metes and bounds of the tract.

The opposing theory of the defendants is that the land is part of block 26, which adjoins block 27 on the west, and is within the limits of the 50,000 acre reservation. Block 26 also contains 5,000 acres, and was patented by the Commonwealth to Smith by metes and bounds, and is of record in the land office.

In these circumstances, the plaintiff, realizing that it

was incumbent upon him to prove that the land in controversy was within block 27, sought to show that fact by C. A. Albert, the county surveyor. Albert had never surveyed block 27 and possessed no personal knowledge of its lines and corners. His testimony amounts to this: that twenty years before the trial one Thomas Davis (Warder's agent, who had since died) pointed out to him what he alleged to be the northeast corner of block 27. There was no corner tree standing on the spot at that time, or other monument, to mark the corner and substantiate Davis' statement. He was a surveyor, it is true, but it was not shown that he had identified the corner in question or other lines and corners in block 27 or adjoining tracts by actual survey; nor was it shown upon what knowledge or information his declaration to Albert was founded.

In *Clements* v. *Kyles,* 13 Gratt. (54 Va.) 469, it was held, "that the statement of a person, living on the land at the time, made many years before the trial, at which time he was dead, pointing out to the witness two of the corners called for in W's patent, is not competent evidence; he not having been the surveyor or chain carrier at the making of the survey, or owner of that or adjoining lands calling for the same boundaries, or having any motive or interest to enquire and ascertain the facts." Lee, J., in the same case, at page 478, observes: "But although as stated in the opinion of the court in *Boardman* v. *Reed,* 6 Peters 328, [8 L. Ed. 415] and approved in *Harriman* v. *Brown,* 8 Leigh, (35 Va.) 706, from the perishable charatcer of the landmarks in this country, evidence of hearing as to particular facts may under proper restrictions be received upon a question of ancient boundary, yet such evidence should be carefully watched because from its very character it may in many or most cases be utterly impossible to meet or disprove

it . . . it should not be carried further than required by the absolute necessities of the case."

In *Fry* v. *Stowers,* 92 Va. 13, 22 S. E. 500, this court reversed the judgment of the trial court because of the admission of declarations similar to those admitted in this case. See also *Douglas Land Co.* v. *Thayer Co.,* 107 Va. 292, 58 S. E. 1101.

The witness, Albert, in his testimony and report of survey likewise transgressed the rule laid down by Riely, J., in *Holleran* v. *Meisel,* 91 Va. 144, 21 S. E. 658, that "In an action of ejectment, the question whether the land in controversy is within the boundaries claimed by the plaintiff's declaration is a question of fact upon which witnesses may state their knowledge, but upon which experts may not express opinions. On such questions expert testimony is not admissible."

The evidence relied on to identify the beginning point of block 27 being inadmissible, it follows that the entire structure erected thereon must fall.

Another fundamental assignment of error urged involves the ruling of the court with respect to a deed in the plaintiff's line of title from R. B. Musick and wife, conveying the land described in the declaration to Jesse Beam and —— Nichols.

The defendant offered to prove by Jesse Beam that A. B. Nichols was the grantee intended in the deed; that witness and A. B. Nichols bought the land jointly; "that witness received the deed and turned it over to A. B. Nichols who still has it." But the court excluded the evidence and held that the legal effect of the deed from Musick and wife was to convey the entire tract of land to Beam.

This we think was error.

In *Colpoys* v. *Colpoys,* Jacob's Reports, 451, Sir Thomas Plumer (Master of the Rolls of the High Court

of Chancery), at pp. 463-464, says: "In the case of a patent ambiguity, that is one appearing on the face of the instrument, as a general rule a reference to matters dehors the instrument is forbidden. It must, if possible, be removed by construction, and not by averment. But in many cases this is impracticable; where the terms used are wholly indefinite and equivocal, and carry on the face of them no certain or explicit meaning, and the instrument furnishes no materials by which the ambiguity thus arising can be removed; if in such cases the court were to reject the only mode by which the meaning could be ascertained, viz: the resort to extrinsic circumstances, the instrument must become inoperative and void. As a minor evil, therefore, common sense and the law of England (which are seldom at variance) warrant the departure from the general rule, and call in the light of extrinsic evidence. The books are full of instances sanctioned by the highest authorities both in law and equity. . . . When a legacy is given to a man by his surname, and the christian name is not mentioned, is not that a patent ambiguity? Yet, it is decided, that evidence is admissible."

In *Fletcher* v. *Mansur*, 5 Ind. 267, the land was conveyed to Barret by his surname alone, leaving a blank for his christian name, and the deed was delivered by the grantor to him intending thereby to vest in him the legal title. Held, the omission of the christian name was an ambiguity that could be supplied by proof *aliunde.*

So, in *Morse* v. *Carpenter*, 19 Vt., 615, where the deed was to Morse & Houghton of Bakersfield, and it was proved that the plaintiffs, who claimed under the deed, had lately been partners in that town, they were allowed to take the title.

In 3 Washburn on Real Property 280, the author says: "And where the christian name of the grantee was left

blank in a deed, it was held competent for him to show who was intended by proof *aliunde,* he being in possession of the deed.'' Citing *Fletcher* v. *Hansur,* and *Morse* v. *Carpenter, supra.* See 1 Devlin on Real Estate (Deeds), 3rd ed., sec. 205, and sec. 209, citing *Staak* v. *Sigelow,* 12 Wis. 234. In sec. 208 the distinction is drawn between the legal effect of a deed to a partnership and a deed to the members of a firm, describing them as composing the firm. In the former case the partner or partners named take the property as grantees, encumbered, however, by an equitable lien in favor of the unnamed partners; while in the latter each partner takes an undivided interest in the land.

Defendants offered in evidence the record in the chancery cause of *James Campbell* v. *Richard Smith's heirs* to extract the title to the 50,000 acres of land reserved in the deed from Smith to the Warders (which included block 26 of 5,000 acres), as tending to show that the plaintiff never obtained title to the land in controversy. To the introduction of that record the plaintiff objected; the court admitted the pleading, process and decrees and the deed made in pursuance thereof, but excluded the depositions and other evidence in the case, to which latter ruling the defendants excepted.

There was no error in refusing to admit the evidence. The pleadings showed the issues involved in the suit, and the decrees showed the decision of the court upon those issues, and the deed showed that the decrees had been carried into effect. The record imports verity, the jury had no power to review the decision of the court, and the only effect of admitting the evidence would have been to confuse and mislead them. The rule is well settled that it is not necessary in a civil case to introduce the whole record of another case in evidence, but only such parts of it as relate to the matters in issue. *Wynn* v. *Harman's*

*Devisees,* 5 Gratt. (46 Va.), bottom p. 374 (Va. Rep. Anno.) and cases cited in notes.

The plaintiff in rebuttal offered in evidence the record in an action of ejectment wherein Jesse Beam was plaintiff and Dock Sutherland defendant, to the introduction of which the defendants objected on the ground that it was evidence in chief, and, moreover, because it was not between the same parties or their privies and did not embrace the land in controversy. The order of the admission of evidence is always in the discretion of the trial court, and does not constitute reversible error unless such discretion has been abused to the prejudice of the other party. It was shown that "Dock Sutherland" and "Johnson Sutherland" was the same person, and the latter one of the defendants in the case, and there was evidence tending to show that the land involved in that action was part of the land in controversy here. Therefore the record was admissible evidence against Johnson Sutherland—at least for the purpose of proving a breach in the continuity of his possession, provided, however, it was shown that possession of the land was taken by Beam under his judgment.

We have thus endeavored to dispose of the more important questions of evidence raised on the former trial, such as are likely to occur at the next trial; but it is not practicable to anticipate what the evidence may be with sufficient definiteness to enable us to pass upon the pertinency of the instructions offered at the last trial to new conditions that may arise on the new trial. For that reason it would be profitless to notice the assignments of error with respect to instructions.

For these reasons the judgment must be reversed and a new trial directed, and the case remanded.

*Reversed.*