Staunton.

## SUTHERLAND AND OTHERS V. GENT.

### September 20, 1917.

1. PUBLIC LANDS — *Interlocks* — *Adverse Possession.*—Where one grant conflicts in part with another, occasioning an interlock, the elder patentee under his grant acquires at once constructive seisin in deed of all the land embraced within its boundaries, although he has taken no actual possession of any part thereof. The junior grantee, under his grant, acquires similar constructive seisin in deed of all the land embraced by his boundaries, except that portion within the interlock, the seisin of which has already vested in the senior grantee. Where, in the case of conflicting grants, the junior patentee settles upon that portion of the land within the interlock, claiming the whole within his boundary, he thereby ousts the senior patentee of his constructive seisin and becomes actually possessed to the extent of his grant. Here possession of part is possession of the whole. But if his settlement is outside of the interlock, the possession of part is to be construed in reference to the conflict of boundaries, and, with whatever claim it be taken, it gives him possession of that part of the land only lying without the interlock. To overcome the constructive seisin in deed of the senior patentee and work an ouster, there must be an actual invasion of his boundary by some act or acts palpable to the senses and which would serve to admonish him that his seisin is molested.

2. APPEAL AND ERROR—*Conflict of Evidence*—*Review by Appellate Court.*—In an action of ejectment, the questions at issue were whether the plaintiff had shown the location of the land in question in a certain block of a survey, and whether defendants had shown adverse possession under color of title of the land claimed by them, or any part thereof, within an interlock, for ten years since the senior title of plaintiff accrued. As both these propositions involved jury questions, and both, upon highly conflicting evidence, were fairly submitted to and passed upon by the jury in favor of the plaintiff, their findings upon the facts, approved by the trial court, were beyond the cognizance of the Supreme Court of Appeals.

3. INSTRUCTIONS—*Sufficiency.*—Where the instructions, as a whole, fully and correctly propounded the law upon every material question in the case, more cannot be required of the trial court.

Error to a judgment of the Circuit Court of Russell county in an action of ejectment. Judgment for plaintiff. Defendants assign error.

· *Affirmed.*

### PLAINTIFF'S INSTRUCTIONS.

### No. 1.

The court instructs the jury that if they believe from a preponderance of the evidence in the case that the plaintiff has shown legal title in himself to the land in controversy and the present right of possession at the time of the institution of this suit, then they must find for the plaintiff.

### No. 2.

The court instructs the jury that if they believe from a preponderance of the evidence in this case, that the land in controversy is in what is known as Block No. 27 of the Richard Smith patent and surveys, and that plaintiff has connected himself therewith under his title papers introduced in evidence, that they cover said land and plaintiff had the right of possession at the time of the institution of this suit, then you will find for the plaintiff.

### No. 3.

The court instructs the jury that while lands remain uncleared or in a state of nature, they are not susceptible of adverse possession against an older patentee, or one holding under such older patentee, except by acts of ownership effecting a change in their condition, which, from their nature, indicate a notorious claim of title, and to constitute

such adverse possession there must be occupancy, cultivation, improvement, or other open, notorious and habitual acts of ownership.

### No. 4.

The court instructs the jury that the defendants to sustain their defense of continued adversary possession must show that such possession was continuous for a period of ten years prior to the institution of this suit, and the court tells the jury that abandonment of possession, if the jury should believe by a preponderance of the evidence there was an abandonment, would break the continuity, unless the abandonment was after the end of the continuous ten year period.

### No. 5.

The court instructs the jury that if they believe from a preponderance of the evidence that the plaintiff has legal title to the land in controversy under his title papers in the manner set out in plaintiff's instruction No. 2 and that the 207-acre tract or any part of the land claimed by defendants laps on plaintiff's land then defendants must prove actual open, notorious, exclusive, and continuous possession of some part of the land described in plaintiff's declaration for a period of ten years, or possession of some part of the 207-acre tract, claiming the whole, for ten years continuously, prior to the institution of this suit before such adverse possession can avail defendants in this case and defeat plaintiff's right to recover.

### No. 6.

The court instructs the jury that if they believe from a preponderance of the evidence in this case that plaintiff has legal title to the land in controversy, under title papers introduced in evidence, as stated in plaintiff's instruction No. 2, and that the deed introduced in evidence by defendant from Alexander Sutherland to them, dated on the 27th day

of August, 1888, for 207 acres covers any part of the land described in plaintiff's declaration for said 207 acres of land, that then before possession of defendants of said land can ripen into good title by adverse possession the defendants must have actual, open, notorious, exclusive, and continuous possession of some part of the land described in plaintiff's declaration for a period of ten years, or possession of some parts of the 207-acre tract claiming the whole, prior to the institution of this suit.

### No. 7.

The court instructs the jury that there are five characteristics of adverse possession of land, which must exist, before title to land is acquired by such adverse possession, as follows:

First: It must be hostile to, or adverse to the true title holder.

Second: It must be an actual possession.

Third: It must be a visible, notorious and exclusive possession.

Fourth: It must be a continuous possession.

Fifth: It must be a possession under color of title.

### No. 8.

The court instructs the jury that occasional acts of trespass on forest land uninclosed, annually entering on said land to range cattle in the woods, or salt cattle or ranging sheep or hogs, and other like acts, amounting to mere trespasses, are not sufficient to establish actual possession.

### No. 9.

The court instructs the jury that the defense of adverse possession in this case is an affirmative defense and that the burden of proof is on the defendants to establish such adverse possession by a preponderance of the evidence in the case.

To the giving of all or any of which said instructions, the defendants objected, but the court overruled the defendants' objections and gave to the jury all of the said nine instructions offered by the plaintiff as above set forth, to which ruling and action of the court in overruling defendants' objection to the said instructions the defendants then and there excepted. And thereupon the defendants on their part offered twenty-five instructions numbered from one to twenty-four inclusive, one being numbered three and one-half, and asked the court to give the same to the jury, which said instructions are in the words and figures following:

### DEFENDANTS' INSTRUCTIONS.

### No. 1.

The court instructs the jury that the possession by the defendants of the land in controversy is *prima facie* evidence that they have title thereto. And in order to entitle the plaintiff to recover in this action he must show he has complete legal title to the land, and without such proof the jury must find for the defendants, whether the defendants have any title or not.

### No. 2.

The court instructs the jury that the plaintiff can recover in this action only on the strength of his own title; that it does not matter whether the title of the defendants is defective or not, the question is not whether the defendants have title to the land in this suit mentioned, but whether the plaintiff has title thereto.

### No. 3.

The court instructs the jury that the plaintiff must show the legal title in himself and a present right of possession at the time of the commencement of this action, before the

defendants are called upon to show anything, and the party in possession is presumed to be the owner until the contrary is proved.

### No. 3½.

The court instructs the jury that the plaintiff cannot recover in this case unless the land in controversy is in Richard Smith grant No. 27; and the burden is upon the plaintiff to establish this by a preponderance of the evidence.

### No. 4.

The court instructs the jury that the burden is upon the plaintiff to prove by a preponderance of the evidence in this case that the land in controversy actually lies within grant No. 27 of 5,000 acres from the Commonwealth to Richard Smith; and unless you believe that the plaintiff has so proven this as a fact, then you must find for the defendants in this case, whether the defendants have any title thereto or not.

### No. 5.

The court instructs the jury that if they believe from all the evidence that the boundaries of grant No. 27 of 5,000 acres from the Commonwealth to Richard Smith are in such doubt and uncertainty that they cannot say whether or not they embrace the land in controversy, then they must find for the defendants.

### No. 6.

The court instructs the jury that even should they believe by a preponderance of the evidence that the land in controversy lies within the Richard Smith patent No. 27 of 5,000, yet if you believe that the same had been conveyed by Warders prior to June 23, 1888, to Dale Carter, or that the defendants have held the same or any part thereof in adverse possession for a period of ten years prior to the time plaintiff, Gent, moved his sawmill thereon, under color of title, then you must find for the defendants.

And in this connection the court tells the jury that the deed of August 27, 1888, or by writing purporting to convey land constitutes color of title, and it makes no difference whether the color of title is good or bad title or whether the same has been lost or seen by anybody but the parties thereto, so it sufficiently describes the land.

### No. 7.

The court further tells the jury that unless it has been satisfactorily shown by a preponderance of the evidence that the deeds of May 12, 1908, and May 15, 1908, from Thompson and Jamison respectively to the plaintiff, Gent, covers the land in controversy then they cannot find for the plaintiff more than a one-sixth interest in the land in controversy.

And the court further tells the jury that if. they believe from all the evidence that the boundaries of the said deeds are in such doubt and uncertainty that they cannot say they embrace the land in controversy then they cannot find for the plaintiff more than one-sixth undivided interest in the land in controversy.

### No. 8.

The court instructs the jury that in an action of ejectment a defendant who is in peaceful possession of land sought to be recovered is entitled to hold the same against all the world except the true owner thereof.

### No. 9.

The court instructs the jury that if they believe from the evidence in this case, that Alexander Sutherland and the defendants to whom he conveyed same were at any time living upon, occupying and in actual possession of the land in controversy, then such possession during its continuance was notice to all persons whomsoever of whatever claim said Alexander Sutherland and said defendants had to said land in question.

### No. 10.

The court further instructs the jury that if they believe that the defendants have had adverse possession of the land in dispute for the period of ten years prior to the institution of this suit that this gives the defendants the right to recover even against the strongest proof of title, which, independent of such adversary possession, would be better title, and the jury should find for the defendants.

### No. 11.

The court instructs the jury that the exercise by the defendants, or their father under whom they claim, of visible, open, notorious and habitual acts of ownership, over the land in controversy is sufficient evidence of possession, and it is not necessary to such possession that the land should be enclosed, or built upon, or actually cultivated or cleared.

### No. 12.

The court instructs the jury that color of title is a writing purporting to convey land and if they believe from the evidence in this case that the defendants or their father under whom they claim, entered upon any part of the land described in the deeds June 23, 1888, and August 13, 1888, from Warders to Musick, and held the same adversely for a period of ten years prior to the institution of this action claiming the same, under said color of title, then you must find for the defendants, it matters not what grant you believe it lies in.

### No. 13.

The court instructs the jury that in order to constitute adverse possession, it is not necessary that the land should be enclosed or built upon, but the entry by the defendants and those under whom they claim must have been made under a claim of title, with the intention of taking possession, and be accompanied with such visible, actual, adverse,

continuous and exclusive acts of ownership, as from their nature indicate a notorious claim to, and possession of the property, and if they believe from the evidence that the defendants and their father through whom they claim took possession under such a claim of title of the land in controversy, and have continuously, for the period of ten years prior to the institution of this action, exercised such actual, hostile, visible and exclusive acts of ownership over the land, as, from their nature, indicated a notorious claim to, and possession of, the property they must find for the defendants.

### No. 14.

The court instructs the jury that, one in *bona fide* possession of land, is presumed to have a legal title until the contrary is shown, and, therefore, if they believe from the evidence that the defendants, W. H. Sutherland and others, were at the institution of this suit in *bona fide* possession of the 207-acre tract of land claimed by them, which includes the land in dispute, having cleared, cultivated and built upon portions of said tract, claiming under a deed for the same, then they are presumed to have the legal title to the said 207-acre tract, including the land in dispute, until the contrary is shown.

### No. 15.

The court instructs the jury that the plaintiff, J. W. Gent, must show a legal title in himself, and a present right of possession at the time of the commencement of this action, before the defendants, W. H. Sutherland and others, are called upon to show anything; and the party in possession is presumed to be the owner until the contrary is shown, and if they believe the defendants, W. H. Sutherland and others, were at the time of the institution of this suit, in possession of any part of the 207-acre tract, claimed by them, including the land in controversy, under a deed de-

scribing the boundaries of same, and claiming all the land within such boundaries, they are presumed to be the owners of the land in controversy until the contrary is proved.

### No. 16.

The court instructs the jury, that even should they find that the land in controversy is in Richard Smith grant No. 27 of 5,000 acres, still if they believe from the evidence, that a deed was made by Jesse Wampler prior to August 27, 1888, about the year 1885 or 1886, or thereabouts, to Alexander Sutherland, for the tract of 207 acres, which was also within the said grant No. 27, and including the disputed land, giving the courses and distances; that the defendants, W. H. Sutherland and others, connect themselves with this Wampler title by a regular chain of conveyances (from Jesse Wampler to Alexander Sutherland and from Alexander Sutherland to themselves) ; that Alexander Sutherland took possession of the land, and held and claimed same under the deed made by Jesse Wampler to him, the said Alexander Sutherland, cleared, fenced and erected buildings upon and cultivated portions of the land, claiming title to the whole boundary embraced by his deed, from Jesse Wampler; that the defendants, W. H. Sutherland and others, and their father, Alexander Sutherland, under whom they claim, having continuously held and cultivated the cleared land from the time Alexander Sutherland took possession for more than ten years prior to July 3, 1906, claiming title to the whole boundary embraced by the deed from Jesse Wampler to Alexander Sutherland that they cut timber for rails to build and repair fences on the land, and for sawing into lumber and deadened timber on the wooded portions of this land; and that at the time Alexander Sutherland took possession of the said 207-acre tract, which includes the land in controversy under the deed made to him by Jesse Wampler, the Warders were not in possession,

either in person or by tenant, of any part of the larger tract of land claimed by them, which includes said 207-acre tract, they should find for the defendants, W. H. Sutherland and others, in this action, even though they should further believe that Jesse Wampler did not have any title to the said 207-acre tract deeded by him to Alexander Sutherland, and that the greater part of the said 207-acre tract may have remained in the woods and in a state of nature.

### No. 17.

The court instructs the jury if they believe from the evidence in this case that Alexander Sutherland was in adverse possession of any part of the 207-acre tract of land under color of title, claiming to the extent of his boundaries, prior to June, 1888, and that the 207-acre tract of land lies wholly within the Richard Smith patent No. 27, that on the 27th of August, 1888, Alexander Sutherland delivered a deed to, and possession of said tract of land of 207 acres, which included the land in controversy, to the defendants in this case, who thereupon entered upon the same or any part thereof and cleared, cultivated, cut timber, paid taxes, improved, and used the same for farming purposes, and held possession thereof, openly, notoriously, exclusively, and continuously for a period of ten years thereafter, claiming the same under said deed, then good and perfect legal title to the said land so described in said deed and each and every part and parcel thereof was thereby invested in the defendants, and they must find for them in this case. And the court further says if the defendants so entered upon any part of the land described in the deed by their father, Alexander Sutherland, and so held possession of the same, or any part thereof, for the said period of ten years the possession of the same or any part thereof was possession of each and every part described in said deed, and it makes no difference whether such possession was above or below

the Josh Elliott house, so that it was in boundaries of the 207-acre tract, described in the said deed to them by their father or whether the same lies in grant No. 26 or 27 to Richard Smith; and if the jury so believes they must find for the defendants. And the court further tells the jury that if they believe Joe Skeen or Josh Elliott, or both of them, lived upon said land, as tenants of the defendants, then their possession must be counted for the defendants.

### No. 18.

The court instructs the jury that if they believe from the evidence that in the year 1885 or 1886, Jesse Wampler executed a deed describing the land in controversy, and delivered the same to Alexander Sutherland, who was clearing or had cleared a portion thereof and that Alexander Sutherland continued to clear, occupy and hold the lands described in the said deed, from Jesse Wampler, or then entered thereon, or any part thereof, and continued to hold the same in actual, continuous and exclusive possession, until the 27th of August, 1888, and on that date or afterwards sold and conveyed the same to his sons and daughters, the defendants in this case, by a writing describing the lands in controversy, and delivered to them the possession, and that they, the defendants in this case, continued to hold the land, occupy, or possess the same in the continuous and exclusive possession, claiming the same as their own under said deed or deeds, for a period of ten years from the time that Wampler delivered the deed to the said Alexander Sutherland, at the end of said period of ten years, a perfect legal title to said land and each and every part thereof was thereby vested in the defendants, and after the end of the said ten years no statement of any of them could affect, divest or convey the same or any part thereof, but they could only convey the same by deed, and if the jury so believe they shall find for the defendants.

## No. 19.

The court further tells the jury that after a person had been in adverse possession of a tract of land under color of title for ten years he has a perfect legal title thereto, and no statement afterwards can in anywise affect the title thus acquired, and no one can recover in ejectment from a person having such a legal title.

## No. 20.

The court further tells the jury that the ejectment suit of Beam against Dock Sutherland cannot in any event affect the rights or interest of any of the other defendants than Dock Sutherland in this case, in any manner or on any account, or affect their possession to the lands in the 207-acre tract.

## No. 21.

The court further tells the jury that unless they believe that the judgment for the 196 acres of land recovered in the ejectment suit of Beam against Dock Sutherland covers the land in controversy, and the burden is upon the plaintiff to prove this and the location and the extent thereof, by a preponderance of the evidence, then it cannot affect the possession of the defendant, Dock Sutherland. And it cannot affect his possession any farther than the plaintiff has shown it covers the land in controversy.

## No. 22.

The court instructs the jury that a recovery in ejectment of land in the actual possession of another does not affect his possession or stop, prevent, or suspend, the running of the statute of limitations, in his favor, unless a writ of possession issued on such judgment of recovery, or the party recovering afterwards entered into possession in such a manner that if he had no title it would be sufficient possession to be adversary possession against the true owner, and

merely walking over or surveying, or occasionally cuttting timber without such possession is not sufficient. Neither is an agreement that a person recovering in ejectment may enter thereunder sufficient to suspend the running of the statute, unless there is an actual entry of like character.

### No. 23.

The court instructs the jury that the ejectment suit of Beam against Dock Sutherland cannot be considered by you in locating the land in any particular grant, or whether the plaintiff has title to any part of the land in controversy, but can only be considered by you in determining the character of Dock Sutherland's possession to the 207-acre tract, as to whether it was adverse or not, in so far as the 207-acre tract was covered by the 196-acre tract embraced in said suit.

### No. 24.

The court instructs the jury that if they believe from the evidence in this case that the defendants held adverse possession, prior to the institution of this action, of any part of the lands in controversy for a period of ten years after the recovery in ejectment by Beam against Dock Sutherland in 1891, claiming under the deed of their father to them of August 27, 1888, and, to the extent of said deed, then they must find for the defendants, even though Beam dispossessed them or re-entered on said lands after said suit.

To the giving of said instructions as offered by the defendants the plaintiff objected, and thereupon the court refused to give said instructions offered by the defendants, as above set out, numbered 1, 2, 3½, 15 and 16, and modified and gave only as modified said instructions offered by defendants as above set forth, numbered 6, 7, 8, 17, 18, 19,

20, 21, 22, 23 and 24, which last named instructions, as modified by the court and only given as so modified, are as follows:

### No. 6—As Modified.

The court instructs the jury that even should they believe by a preponderance of the evidence that the land in controversy lies within Richard Smith patent No. 27 or 5,000 acres, yet if you believe that the plaintiff has not proven the same had been conveyed by Warders prior to June, 1888, to Dale Carter, or that the defendants have held the same or any part thereof, in adverse possession, as defined in the instructions given in this case on adverse possession, for a period of ten years prior to the institution of this suit under color of title, then you must find for the defendants.

And in this connection the court tells the jury that any deed or writing purporting to convey land constitutes color of title, and it makes no difference whether the color of title is a good or bad title, or whether the same has been lost or seen by anybody but the parties thereto, so it sufficiently describes the land.

### No. 7—As Modified.

The court further tells the jury that unless it has been satisfactorily shown by a preponderance of the evidence that the deeds of May 12, 1908, and May 15, 1908, from Thompson and Jamison, respectively, to the plaintiff, Gent, covers the land in controversy, then they cannot find for the plaintiff more than a one-third interest in the land in controversy. And the court further tells the jury that if they believe from all the evidence that the boundaries of the said deeds are in such doubt and uncertainty that they cannot say they embrace the land in controversy, then they cannot find for the plaintiff more than a one-third undivided interest in the land in controversy.

### No. 8—As Modified.

The court further instructs the jury that in an action of ejectment, the defendant, who is in peaceable possession of land sought to be recovered is *prima facie* the owner and is entitled to hold the same against all the world except the true owner thereof, the true owner must show a preponderance of the evidence, a complete legal title and right to possession at the time of the institution of this action.

### No. 17—As Modified.

The court instructs the jury that if they believe from the evidence in this case that Alexander Sutherland was in adverse possession of any part of the 207-acre tract of land under color of title, claiming to the extent of his boundary line prior to June, 1888, and that the 207-acre tract of land was wholly within the Richard Smith patent No. 27, that on the 27th day of August, 1888, Alexander Sutherland delivered a deed to, and possession of said tract of land of 207 acres, which included the land in controversy, to the defendants, in this case, who thereupon entered upon the same, or any part thereof, and cleared, cultivated, cut timber, paid taxes, improved and used the same for farming purposes, and held possession thereof, openly, notoriously, exclusively, and continuously for a peroid of ten years thereafter claiming the same under said deed, then good and perfect legal title to the said land so described in the said deed and each and every part and parcel thereof, was thereby vested in the defendants and they must find for them in this case. And the court further says if the defendants so entered upon any part of the land, described in the deed, by their father, Alexander Sutherland, and so held the possession of the same or any part thereof, for the said period of ten years the possession of the same or any part thereof was the possession of each and every part described in the said deed, and it makes no difference where such possession

was if it was within the boundaries of the 207-acre tract described in the said deed to them by their father, so the same lies in grant No. 27 to Richard Smith; and if the jury so believes they must find for the defendants. And the court further tells the jury that if they believe Joe Skeen or Josh Elliott, or both of them, lived upon the said land, as tenants of the defendants, then their possession must be counted for the defendants.

### No. 18—As Modified.

The court instructs the jury that if they believe from the evidence that prior to the date of the deed of R. B. Musick in June, 1888, Jesse Wampler executed a deed describing the land in controversy, and delivered the same to Alexander Sutherland, who was clearing or had cleared a portion thereof and that Alexander Sutherland, continued to clear, occupy and hold the land, described in the said deed from Jesse Wampler, or then entered thereon, or any part thereof, and continued to hold the same in the actual, continuous, and exclusive possession, until the 25th of August, 1888, and on that date or afterwards sold and conveyed the same to his sons and daughters, the defendants in this case, by writing describing the land in controversy and delivered to them the possession, and that they, the defendants in this case, continued to hold the lands, occupy, or possess the same in the continuous and exclusive possession, claiming the same as their own under the said deed, or deeds, and to the full extent of the boundary lines thereof for a period of ten years from the time that Wampler delivered the deed to the said Alexander Sutherland, at the end of the said period of ten years, a perfect legal title to the said land, and each and every part thereof, was thereby vested in the defendants, and after the end of the said ten years no statement of any of them could affect or divest, the same or any part thereof, and if the jury so believe they shall find for the defendants.

### No. 19—As Modified.

The court further tells the jury that after an adverse possession of a tract of land under color of title for ten years, has ripened into a perfect legal title thereto, then no statement afterwards can in anywise affect the title thus acquired, and the former owner of the legal title cannot recover in ejectment from a person whose title has so ripened.

### No. 20—As Modified.

The court further tells the jury that the ejectment suit of Beam against Dock Sutherland cannot in any event affect the rights or interest of any of the other defendants than Dock Sutherland in this case, in any manner or any account, or affect their possession to the land claimed under the deed to the 207-acre tract.

### No. 21—As Modified.

The court further tells the jury that unless they believe that the judgment for the land recovered in the ejectment suit of Beam against Dock Sutherland covers the land in controversy, or part thereof, and the burden is on the plaintiff to prove this, and the location and the extent thereof, by a preponderance of the evidence, then it cannot affect the possession any further than the plaintiff has shown it covers the land in controversy.

### No. 22—As Modified.

The court instructs the jury that a recovery in ejectment of land in the actual possession of another does not affect his possession or stop, prevent, or suspend the running of the statute of limitations in his favor, unless a writ of possession issued on such judgment of recovery, or the party recovering, afterwards entered into possession in such a manner that if he had no title it would be a sufficient possession to be adversary possession against the true owner, and merely walking over, or surveying, without such pos-

session is not sufficient. Neither is an agreement that a person recovering in the ejectment may enter thereon sufficient to suspend the running of the statute, unless there was such an entry and possession.

### No. 23—As Modified.

The court instructs the jury that the ejectment suit of Beam against Dock Sutherland cannot be considered by you in locating the lands in any particular grant, or as a muniment of title to any part of the lands in controversy, but can only be considered by you in determining the character of Dock Sutherland's possession as to the land in controversy, whether adverse or not.

### No. 24—As Modified.

The court further tells the jury that if they believe from the evidence in this case that the defendants held actual, open, adverse possession prior to the institution of this action of any part of the land in controversy for a period of . ten years, continuously after the recovery in ejectment by Beam against Dock Sutherland in .1891, claiming under the deed of their father to them of August 27, 1888, and to the extent of the boundary lines of the said deed then they must find for the defendants.

*W. W. Bird, T. L. Sutherland* and *S. H. & G. C. Sutherland,* for the plaintiff in error.

*Finney & Wilson,* for the defendants in error.

WHITTLE, P., delivered the opinion of the court.

This is the third appearance of this controversy in this court. The first appeal was from a decree enjoining appellants, at the suit of appellee, from cutting and removing timber from the land in controversy until the further order

of the court. That decree was affirmed. *Sutherland* v. *Gent,* 111 Va. 511, 69 S. E. 340. At that time defendant in error had brought ejectment against plaintiffs in error to recover 267¾ acres of land situated in Russell county. And the trial of the action of ejectment resulted in a verdict and judgment for defendant in error, which judgment on writ of error was reversed by this court, and the case remanded for a new trial. *Sutherland* v. *Gent,* 116 Va. 783, 82 S. E. 713. The new trial again terminated in a verdict for the plaintiff, Gent, upon which the trial court entered the judgment under review.

The defendants filed a disclaimer as to the land included in the declaration, with the exception of 207 acres, to which they assert title by deed from their father, Alexander Sutherland.

The following excerpts from the opinion of this court on the last appeal will make plain one of the main questions in the case: "The plaintiff to connect his title with the Commonwealth put in evidence a deed from Richard Smith to the Warders, under date May 29, 1806, embracing a large boundary of land in Russell county. The deed recites that the entire tract was divided into various lots of 10,000 acres, 5,000 acres, and other quantities of land, each, for which separate patents had been taken out by the grantor, all of which were recorded in the land office. These various parcels amounted in the aggregate to 384,723 acres, more or less. The deed expressly reserves from the operation of the grant to the Warders a boundary of 50,000 acres sold and conveyed by the grantor to P. Francis De Tu Beuf, and also other lands referred to therein. * * * The theory of the plaintiff is that the land in dispute is part of block 27 of 5,000 acres of the Richard Smith survey, now known as the Warder land. * * * The opposing theory of the de-

fendants is that the land is part of block 26, which adjoins block 27 on the west, and is within the 50,000-acre reservation."

Plaintiff attempted to prove by a witness, Albert, the county surveyor, that the land in controversy was within block 27; but his testimony disclosed that he had never surveyed that block and had no personal knowledge of the location of the northeast corner, the beginning point of his survey. His information mainly rested upon a statement made to him twenty years before the trial by a former agent of the Warders, who had since died, and whose competency to speak on the subject was not made to appear. The court, in dealing with that question said: "The evidence relied on to identify the beginning point of block 27 being inadmissible, it follows that the entire structure erected thereon must fall." And, chiefly for that error, the judgment was reversed.

When the case went back for a new trial, Albert, in obedience to a new order of survey, returned another survey and map, which with his testimony and that of other witnesses, together with documentary evidence, accurately located the beginning corner of block 27, and showed that the land in dispute lay wholly within that boundary and was not included in block 26, as contended by defendants. The evidence for the plaintiff further showed that he connected his paper title through the Warders with Smith, who, as remarked, held block 27 by grant from the Commonwealth.

Defendants did not undertake to connect their title with the Commonwealth, but rested their claim to the 207 acres upon adverse possession for ten years under color of title (the deed from their father, Alexander Sutherland). This feature of the controversy involves the doctrine of "lap," or interlock, between the senior title of the plaintiff and the junior title of defendants.

That doctrine is very clearly stated in *Green* v. *Pennington*, 105 Va. 801, 54 S. E. 877, as follows: "Where one grant conflicts in part with another, occasioning an interlock, the elder patentee under his grant acquires at once constructive seisin in deed of all the land embraced within its boundaries, although he has taken no actual possession of any part thereof. The junior grantee, under his grant, acquires similar constructive seisin in deed of all the land embraced by his boundaries, except that portion within the interlock, the seisin of which has already vested in the senior grantee. Where, in the case of conflicting grants, the junior patentee settles upon that portion of the land within the interlock, claiming the whole within his boundary, he thereby ousts the senior patentee of his constructive seisin and becomes actually possessed to the extent of his grant. Here possession of part is possession of the whole. But if his settlement is outside of the interlock, the possession of part is to be construed in reference to the conflict of boundaries, and, with whatever claim it be taken, it gives him possession of that part of the land only lying without the interlock. To overcome the constructive seisin in deed of the senior patentee and work an ouster, there must be an actual invasion of his boundary by some act or acts palpable to the senses and which would serve to admonish him that his seisin is molested."

The case, moreover, holds that in order to oust the constructive possession of the senior patentee, adverse possession continued for the statutory period after the date of the grant must be established.

It will be seen from the foregoing outline statement of the case that the record presents two major questions of controlling influence:

1. Has plaintiff shown that the 267¾ acres of land described in his declaration is included in block 27; and, if so,

2. Have defendants shown adverse possession of, under color of title to, the 207 acres, or any part thereof, within the interlock, for ten years since the senior title of plaintiff accrued?

Both of these propositions involve jury questions, and both, upon highly conflicting evidence, were submitted to and passed upon by the jury in favor of the plaintiff. Therefore, a review of the evidence would be unprofitable. If the case has been fairly submitted to the jury upon the law, then their findings upon the facts, approved by the trial court, have passed beyond the cognizance of this court.

Innumerable questions of minor importance have been raised affecting the admission and exclusion of evidence, and the interpretation and authentication of documents of various kinds. Of all these exceptions, suffice it to say they have received respectful consideration, and concerning all of them, without more detailed notice, it may be remarked that we have found no reversible error therein.

Of the instructions, thirty-three in number, nine were requested by plaintiff and twenty-four by defendants. The court gave all of those asked by plaintiff, and of those prayed by defendants five were refused, eight were given, and eleven were modified. It may confidently be asserted that the instructions, as a whole, fully and correctly propounded the law upon every material question in the case. More than that cannot be required of a trial court.

We find no reversible error in the judgment of the circuit court, and it must be affirmed.

*Affirmed.*