𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

GRIGGS AND OTHERS V. BROWN AND OTHERS.

January 22, 1920.

1. BOUNDARIES—*Proceedings to Determine—Paper Title of Plaintiffs—No Actual Possession of Land.*—In a statutory proceeding to ascertain and designate the true boundary line or lines between certain coterminous land of the parties under the statute (Acts 1912, p. 133) in such case made and provided, there being no evidence in the case even tending to show any actual possession of any part of the land in controversy by the plaintiffs or any of their predecessors in title, the plaintiffs must rely upon their paper title to sustain their claim of ownership of such land.

2. BOUNDARIES—*Expert and Opinion Evidence—Surveyor's Testimony.*—In a proceeding to ascertain the true boundary line between certain coterminous land of the parties, a surveyor, who was one of the witnesses for plaintiffs, testified that his conclusion from the evidence in the case was that the metes and bounds described in deeds under which plaintiffs claimed included the land in controversy.

*Held:* That, although such testimony was admitted before the jury without objection, that circumstance could not give it any probative value. It being itself unsupported by the evidence on which it was based, all of which was before the jury, it could add nothing to the quantum or effect of such evidence.

3. BOUNDARIES—*New Trial—Verdict Against the Evidence.*—In a proceeding to determine the true boundary line between certain coterminous land of the parties, where there was no evidence before the jury to sustain a finding that the boundary lines of the land as called for in the deeds in the chain of title of the plaintiffs included the land in controversy, the verdict of the jury for the plaintiffs must be set aside and a new trial awarded to the defendants.

4. BOUNDARIES—*Proceedings to Determine—Plaintiff Must Rely on Strength of His Own Title.*—In a proceeding under the statute (Acts 1912, p. 133) to determine the boundary line or lines between certain coterminous land of the parties, as

well as in an action of ejectment, a plaintiff, who cannot rely upon actual possession, must recover, if at all, upon the strength of his own title.

Error to a judgment of the Circuit Court of Westmoreland county, in a proceeding to ascertain and designate the true boundary line between the parties. Judgment for plaintiffs. Defendants assign error.

*Reversed and remanded.*

This is a proceeding which was instituted by the appellees as plaintiffs in the court below by petition exhibited against the appellants to have ascertained and designated the true boundary line or lines between certain coterminous land of the parties under the statute in such case made and provided.

The parties will be hereinafter referred to in accordance with their positions as plaintiffs and defendants, respectively, in the court below.

There was a trial by jury which resulted in a verdict and judgment in favor of the plaintiffs for the land in controversy and the defendants bring error.

The sole assignment of error is that the verdict of the jury is contrary to the law and the evidence.

There are conflicting claims of title which present the case of an interlock between the alleged boundaries of the plaintiffs' and defendants' lands. The land in controversy is contained within such interlock and consists of about one-half of an acre.

The whole tract of land claimed to be owned by the plaintiffs consists of eight and one-fourth acres by recent survey, the lines of which include the land in controversy.

Such eight and one-fourth acres, included within the lines E, B, C, A, D; certain lines of the defendant's land as claimed by them, to-wit, E, B, A, C, F; and the interlock

or land in controversy, included within the lines A, B, C;
are shown on the following diagram:

There is no evidence in the record that the plaintiffs, or
any of their predecessors in title, ever had any actual pos-
session of any part of said interlock or land in controversy
—their possession being confined to that portion of the
eight and one-fourth acres outside of the interlock afore-
said.

On the question of whether the title deeds of the plaintiffs
in evidence conveyed the land in controversy the plaintiffs
rely upon two certain deeds as evidencing the conveyance
of the land E, B, C, A, D as shown on said diagram. One
of these deeds is that from Nancy Crask to Thomas Clark,

of date December 15, 1843, and the other of these deeds is from Julia E. Peake and Eliza I. Peake to Thomas Clark, of date March 22, 1849.

The last named deed describes the parcel of land thereby conveyed, so far as material to be noted, and its boundaries, as follows: "* * * piece or parcel of land containing four or five acres, more or less, * * * bounded by the land purchased by said Clark of Mrs. Nancy Crask on the south, John Powers on the west, the main road on the north, and Griffith's land on the east." There is no evidence in the case concerning the boundary line of the "Griffith's land" thus drawn in question, which tends to locate such line at any earlier time than 1868; and such evidence as there is which goes back that far on that subject consists merely of a plat which purports to be "Portion of Plat and survey of the *Sallie* Griffith estate and notes of survey" made by R. L. Lawrence, surveyor of Westmoreland county in "Sept. 1868." (Italics supplied). This plat, if evidence on the subject, would tend to show that the line of the "Griffith's land" which is adjacent to the land now claimed by defendants was located in 1868 as claimed by defendants; but no deed of conveyance is in evidence conveying any land in accordance with such plat, nor any deed referring to or making such plat a part thereof, nor any record of any suit in which there is a decree of court establishing the said boundary line of the "Griffith's land" in accordance with said plat. See *Sulphur Mines* v. *Thompson,* 93 Va. 293, 25 S. E. 232; *Christian* v. *Bulbeck,* 120 Va. 74, 90 S. E. 661. And there is an entire absence of any evidence in the case tending to show that the line of "Griffith's land on the east" mentioned in the Peake deed of 1849 was on the same location as that of the said line of the *Sallie* Griffith's estate in 1868 as shown on the Lawrence plat aforesaid. There is also an entire absence of any evidence in the case of any probative value tending to show the location as of the date of the Peake deed in 1849 of the land purchased by said

Clark of Mrs. Nancy Crask, as will appear from what is presently said in connection with the deed first above mentioned.

The deed first above mentioned, to-wit, from Nancy Crask to Thomas Clark, of date December 15, 1843, describes the land thereby conveyed, so far as material to be noted, and its boundaries, as follows: "* * * a certain portion or parcel of land * * * containing two roods, twenty-nine and one-half rods (be the same more or less) and bounded as follows: Beginning at a large white oak in John Powers line, thence north thirteen degrees, west 36.68 rods to a cedar on the hill, corner to said Crask's lot. Thence north fifty-seven and three-fourth degrees, east nine rods to a locust corner to do. Thence north twenty degrees, west nine rods to another locust corner to do. Thence north eighty degrees, east one rod to a locust in Griffith's line. Thence in *his* line (leaving a lane one rod wide between do, and said Crask's lot), south two degrees, east fifty-two rods to the beginning." (Italics supplied).

There is, as aforesaid, no evidence in the case of any probative value to fix the location of the land conveyed by the Crask deed.

The use of the word *his* in this deed evidences that the "Griffith's line" therein referred to was not the line of the land of the *"Sallie* Griffith" whose estate is mentioned in the plat of the survey of September, 1868, above referred to, and there is no evidence in the case on the subject indicating that the "Griffith's line" referred to in the Crask deed was on the same location as the "Griffith's line" shown on the said plat of the September, 1868, survey or what is later referred to by other deeds and the parol testimony in the case as the "Griffith line." No deeds or other evidence of the title to or from any "Griffith" appear in evidence.

There are no deeds or other evidence of title to or from John Powers which appear in evidence. The only testi-

mony in the case as to the location of the "John Powers' line" is parol and has no specific reference to the title even as far back as 1868 and does not undertake to locate where the "John Powers line" was in 1843 or 1849 when the two deeds above mentioned were executed.

The following is all of the testimony we have been able to find in the record with respect to the location on the ground of the calls for metes and bounds in the Crask deed:

One of the plaintiffs testified that he "undertook to begin and run around the disputed triangle to see if it contained the two roods and twenty-nine and one-half rods called for in the Nancy Crask deed referred to and it was decided by the surveyor that it about did it and the survey stopped there." A surveyor, who was a witness for plaintiffs, testifies that he began at the point "C" as shown on said diagram "and ran according to the calls in the deed from Nancy Crask to Clark to see if the triangular piece of land between the points marked 'A' 'B' and 'C' on the diagram were not identical with the ground called for in the Crask deed. He is convinced they are, and that the triangle in dispute is the identical land called for in the Crask deed * * *." But on cross-examination he admitted that he found nothing to indentify or locate on the ground any of the corners or lines called for in the Crask deed or to determine whether the land conveyed by such deed came to the line C. A. as shown on said diagram. That he did not discover "the cedar on the hill, corner to Crask's lot, or the locust corner to Crask's lot, or the other locust corner to same, or the locust in Griffith's line called for in said Crask's deed or anything to identify these points * * *that the land had been partially cleared up." That he did not allow anything for the lane one rod wide between the lot conveyed by Crask and the "Griffith line." When asked "if he could not have selected any point anywhere out in the open field and starting from that point have run a triangular line or

71

lines between which would have been an area of two roods; twenty-nine and one-half rods, said he could. But stated he believed this to be the correct line because it seemed to coincide."

*Downing & Baker,* for the plaintiffs in error.

*Frank Stuart, W. T. Mayo, W. C. Brown* and *F. W. Scrimger,* for the defendants in error.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court:

[1] There being no evidence in the case even tending to show any actual possession of any part of the land in controversy by the plaintiffs or any of their predecessors in title, as appears from the statement preceding this opinion, the plaintiffs must rely upon their paper title to sustain their claim of ownership of such land.

Further: As also appears from said statement, there is a break in the chain of the plaintiff's claim of paper title due to the fact that there is no evidence in the case of any probative value which even tends to show that the boundaries, by which the land is claimed to be conveyed by two deeds on which plaintiffs rely and must rely, include the land in controversy.

The deeds alluded to are mentioned in detail in the statement aforesaid and will be hereinafter designated by the names of the grantors therein,. as the Crask deed and the Peake deed. We will first consider the general description contained in such deeds.

As does appear from such deeds the parcels of land conveyed thereby adjoin and the two parcels lying adjacent to each other extend toward the south from the road mentioned and which is shown on the diagram above set out. But there is no evidence of any probative value even tending to show that such land as conveyed by such deeds extend beyond, *i. e.* to the south of, the line A B shown on such diagram. The John Powers and Griffith land men-

tioned in the Crask and Peake deeds may have then corn-
ered at a different point from the point "C" shown on said
diagram.    The land in controversy may have belonged to a
"Griffith" at the time these deeds were made, and the be-
ginning station of the survey, the calls of which are con-
tained in the Crask deed, may have been at A as shown on
said diagram and a line of the Griffith land may have then
run from the points A to E as designated on such diagram;
or at that time such beginning point may have been some-
where on the line A B as shown on such diagram, and the
John Powers line may then have been on a different location
than from D to A and the Griffith line on a different loca-
tion than from E. to B. as shown on such diagram.    Such
locations would depend on the location of the Powers and
Griffith lands in question at that time as evidenced by their
titles, respectively, appearing from deeds or other evidence
of their acquisition of lands in that locality and the evidence
of what alienation they may have made of such previously
acquired lands prior to the time in question and there is an
entire absence in this case of any evidence whatsoever of
that character.

The quantity of land conveyed by the two deeds in ques-
tion as called for therein falls short of the eight and one
fourth acres claimed by plaintiffs by some two and three-
fourths to three and three-fourths acres; so that even that
element of description contained in such deeds, which is of
the least probative value on the subject of location, fur-
nishes no evidence tending to show that the lands conveyed
by such deeds extended from the road, shown on said dia-
gram, so. far south as the line A B, even if we could as-
sume that the side lines of the plaintiffs' land were located
by their paper title approximately as claimed by them.

As appears from the statement preceding this opinion
both of said deeds conveyed by general description—the
Peake deed by general description only—the Crask deed
also, however, by calls for courses and distances.    We will

now consider the extrinsic evidence before the jury to locate the land by such courses and distances. On this subject we are met, as appears from the aforesaid statement, with the fact that there was an entire absence of any evidence before the jury to locate on the ground the beginning point, or any other point of beginning or ending of any of the lines of the land as per such metes and bounds.

[2] There is left only the testimony of a surveyor, who was one of the witnesses for plaintiffs, which is mentioned in the aforesaid statement, to the effect that his conclusion from the evidence in the case was that such metes and bounds included the land in controversy. Such conclusion was not evidence. *Va. Coal & Iron Co.* v. *Ison,* 114 Va. 144, 75 S. E. 782; *Richmond* v. *Jones,* 111 Va. 214, 68 S. E. 181; *Holleran* v. *Meisel,* 91 Va. 144, 21 S. E. 658; *Sutherland* v. *Gent,* 116 Va. 783, 82 S. E. 713.

And although such testimony was admitted before the jury without objection, that circumstance cannot give to it any probative value. Being itself unsupported by the evidence on which it was based, all of which was before the jury, it could add nothing to the quantum or effect of such evidence.

[3] On the whole, therefore, it is plain that there was no evidence before the jury to sustain a finding that the boundary lines of the land as called for in the said deeds in the chain of title of the plaintiffs included the land in controversy, and hence the verdict of the jury must be set aside and a new trial awarded to the defendants.

[4] There are other questions raised in the case, but in view of the above conclusion it is unnecessary for us to deal with them. It is uncontroverted before us that in a proceeding such as this, equally as in an action of ejectment, a plaintiff, who cannot rely upon actual possession, must recover, if at all, upon the strength of his own title.

*Reversed and remanded.*