## Staunton

### VIRGINIA COAL AND IRON COMPANY V. ISON AND OTHERS.

September 9, 1912.

Absent, Cardwell, J.

1. BOUNDARIES—*Description—Calls for Quantity.*—While the call for quantity is the least certain element of description and will not control where the muniments or courses and distances are called for, by which the land conveyed can be identified, yet when no known and established boundaries are named as describing the land, and the deed contains no other description sufficiently certain to define the land intended to be conveyed, the quantity of land mentioned may be used for the purpose of ascertaining the granted premises, and in such a case may be a controlling force.

2. INSTRUCTIONS—*Evidence to Support.*—It is error to give an instruction when there is no sufficient evidence upon which to base it, as it tends to mislead the jury.

3. EVIDENCE—*Expert Testimony—Surveyors—Opinions—Conclusions.*—While surveyors may be examined as experts upon matters with which they are peculiarly acquainted and which cannot be made known to the jury without such testimony, yet they cannot testify as to conclusions of fact or conclusions of law, as such matters are for the determination of the jury or the court, as the case may be.

4. WITNESSES—*Impeachment—Prior Inconsistent Statement.*—A witness examined in a case may be interrogated as to prior statements made by him inconsistent with his testimony given in the case.

5. BOUNDARIES—*Evidence—Private Surveys.*—While a private survey may be admitted as evidence of boundary between those who were parties to it, or who claim under them, it is not admissible as independent evidence against strangers.

Error to a judgment of the Circuit Court of Wise county, in an action of ejectment. Judgment for the defendants. Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*E. M. & E. H. Fulton, Bullitt & Chalkley* and *Rufus A. Ayers,* for the plaintiff in error.

*Vicars & Peery,* for the defendants in error.

BUCHANAN, J., delivered the opinion of the court.

The plaintiff in error instituted its action of ejectment in the Circuit Court of Wise county to recover the coal and certain other minerals in and under a tract of land, the title to the surface of which and possession thereof were in the defendants in error.   Both parties claim under a common source of title, and neither party was required or attempted to trace title beyond Arch Hunsucker, their common, though not immediate grantor.   The plaintiff derived its title to the mineral interest claimed by deed from Arch Hunsucker to Price and Steinman, dated December 9, 1874; by deed from Steinman to Price, dated December 31, 1874; and by deed from Price to the plaintiff, dated January 1, 1908.   The defendants derived their title to the interest in the land claimed by them by deed from Arch Hunsucker to John M. Robinett, dated November 12, 1878, and by deed from Robinett to John F. Ison, dated February 19, 1886.

It is conceded by the defendants in error, in the brief of their counsel, that the plaintiff is entitled to recover the coal and other minerals sued for in and on the land embraced in the deed of John Hunsucker to Archibald Hunsucker.   There is no difficulty in identifying the boundary lines of the tract of land described by that deed, and which are indicated upon a rough diagram on the following page, beginning at the figure 1, and running by the figures 2, 3, 4, 5, 6 and 7, and so on until the call from the figure 11 is reached.

From the corner at the point marked "11," which is established, the call is "thence S. 72 W. 94 poles to a stake; thence a southeast direction, crossing two ridges, to a laural branch; thence down said branch to the river; thence down the river to the beginning." The controversy in the case is over the location of the corner in the call S. 72 W. 94 poles to a stake, and the line from that corner to the laurel branch.

The contention of the defendants is that said corner and line should be located in accordance with the seventh and eighth calls in the 100 acre grant, the boundaries of which are indicated on the diagram by the figures 1, 2, 3, 4, 5, 6, 12 and 1, as claimed by them. The plaintiff, on the other hand, insists chiefly that the line from 6 does not end at 12, but at 13, and that the next call, whether it runs from 12 or 13, should be so run in a southeast direction to the laurel branch as that the whole area in the tract conveyed will be 230 acres, as called for by the deed.

The jury found in accordance with the defendants' contention, which limited the plaintiff's recovery to about 146 acres instead of 230 as claimed by it.

The plaintiff insists that the verdict is contrary to the evidence, and that the finding of the jury was brought about by the erroneous action of the court in giving and refusing instructions.

One of the instructions given, and that to which the plaintiff objects most, was in the following language:

"III. The court further instructs the jury that if you believe from the evidence in this case that the line called for in the deed from Arch Hunsucker to J. D. Price and A. J. Steinman, from a stake 'thence in a southeast direction crossing two ridges to Laurel Branch,' may be run in a number of ways, either of which will conform to the above said description in said deed, and for that reason

said call is indefinite, but if said call can be located from the evidence in this case it is the duty of the jury to locate said call and uphold said deed. And in locating said call, if the evidence does not show that there are natural objects or well defined lines called for in the title papers in evidence in this case which would place the line at some other place, you will establish said line by commencing at the 'beech and cucumber standing near the mouth of a branch' (corner to the 30 acre patent), corner in said deed, thence running the bearing and distance called for in said deed, with the proper variation; and from the end of said distance, thence running in a southeast direction crossing two ridges to a point on laurel branch, so as to make said deed from Arch Hunsucker and Steinman contain 230 acres."

The objection made to it is that "the jury could not under it settle the open line so as to include in the boundary 230 acres of land, if the evidence showed there were 'natural objects or well defined lines called for in the title papers which would place the line at some other place,' whereas there was not even a scintilla of evidence (certainly none of any probative force) of any natural objects or well defined lines called for in the title papers which could by any process of reasoning be construed as the line intended by the call 'from thence a southeast direction to a laurel branch' in the deed from John Hunsucker to Arch and subsequent deeds."

A careful examination of the evidence fails to show any natural object or well defined line or lines called for in the title papers which tend to show the true location of the disputed line. The call "thence a southeast direction crossing two ridges to a laurel branch," is the same in the deed from John Hunsucker to Arch Hunsucker, from the latter to Price and Steinman, under whom the plaintiff claims, and in the deed from Arch Hunsucker to Robinett

under which the defendants claim. These deeds not only
fail to show definitely where the disputed line was to
reach the laurel branch, but they tend to show that such
point was not where the closing line of the 100 acre grant
crossed it. The boundary line in all these deeds, from
the beginning corner at 1 to 6, clearly appears from the
courses and distances, or corners called for, or from both,
to be the same as the boundary line of the 100 acre grant
to Rogers and of his deed to John Hunsucker. From the
corner at 6 the call in the 100 acre grant is with the line
of the 30 acre grant S. 72 W. 114 poles, crossing Powell's
river to a stake on a spur of Rogers' ridge. The difference
in the distances called for in the Rogers' grant (114 poles)
and in said deeds (94 poles) is explained by the fact that
those deeds from the point 6 run around the 30 acre grant
to 11 and from 11 in the next call do not, of course, in-
clude the distance between 6 and 11 (20 poles), the length
of the line of the 30 acre grant between 6 and 11. The
termination of the line in the call, S. 72 W. 114 poles (the
call of the 100 acre grant), or S. 72 W. 94 poles (the call
of the said deeds) whether it be at 12, as contended by
the defendants, or at 13, as insisted by the plaintiff, fixes
the point from which the line in controversy must be
run to the laurel branch. The call in the deed from
John Hunsucker to Arch Hunsucker from that point is
"thence a southeast direction crossing two ridges to a
laurel branch." As stated by the surveyors, that line
might be run in accordance with that ambiguous or in-
definite call so as to reach the creek called for at any
point between 15 and 18 on the diagram. There is nothing
in that deed showing that it should be run by the closing
line of the 100 acre grant. That call of the grant is "S.
42 E. 270 poles to the beginning." As before shown, all
the calls from the beginning at 1 to the end of the 94 pole
line, whether it be at 12 or at 13, show that the boundary

line of the land conveyed by John Hunsucker to Arch Hunsucker was located in accordance with the calls in the 100 acre and the 30 acre grants, and that those grants or copies of the calls in them must have been before the draftsman of that deed when it was written.  If it had been intended that the line in controversy should be run with the closing line of the 100 acre grant, the reasonable presumption is that it would have called for that line or its course as given in the grant.  Not only does that deed fail to do this or to indicate with any certainty where the line is to be run, but if the tract conveyed contains the quantity of land called for, the line in question could not be run with the closing line of the 100 acre grant to the laurel branch, for if it were so run the tract conveyed, instead of containing 230 acres, as called for, would contain less than 150 acres.

While the call for quantity is the least certain element of description and will not control where muniments or courses and distance are called for, by which the land conveyed can be identified, yet when no known and established boundaries are named as describing the land, and the deed contains no other description sufficiently certain to define the land intended to be conveyed, the quantity of land mentioned may be used for the purpose of ascertaining the granted premises, and in such a case may have a controlling force.  2 Devlin on Deeds (3rd ed.), sec. 1045; 5 Cyc. 923, 929; 4 Am. & Eng. Enc. L. (2nd ed.) 789-791; and cases cited in the notes of those works.

There can be no question that the land embraced in the deed from Arch Hunsucker conveying the coal and other mineral interests therein to Price and Steinman, and the tract described as 230 acres in the deed from Arch Hunsucker to John M. Robinett was the same land described in the deed from John Hunsucker to Arch Hunsucker.  It further appears from the uncontradicted evidence of John

M. Robinett that the 230 acre tract of land purchased by him from Arch Hunsucker embraced outside of the Rogers 30 acre and 100 acre grants and west thereof other lands estimated to be about 100 acres.

Without further discussing in detail the evidence, it is sufficient to say that the court is of opinion that the court's instruction No. 3, quoted above, is erroneous in the respect complained of, because there was no sufficient evidence upon which to base it, and that it must have misled the jury into finding a verdict which could not be sustained upon any other hypothesis than that the evidence proved there "are natural objects or well defined lines called for in the title papers in evidence," which showed that the controverted line ran with the closing line of the 100 acre grant to the laurel branch.

Other errors are assigned to the action of the court in giving and refusing instructions, but they do not seem to be much relied on, as it is not pointed out in the briefs or oral argument in what respect the instructions given were erroneous or why those rejected should have been given. We do not see that the court erred in refusing instructions other than No. 3.

The action of the court as to the admission and rejection of evidence is also assigned as erroneous.

Mr. Wolfe, a surveyor introduced as a witness by the plaintiff, after stating the boundary lines called for in the deed from John Hunsucker to Arch Hunsucker were the same as those called for in the deed from Arch Hunsucker to John M. Robinett, was asked: "Where do you understand this (the latter) deed was intended to come to Laurel Branch?" Upon objection, the court refused to permit the witness to answer the question.

The ruling of the court was proper. While surveyors may be asked, as expert witnesses, questions upon matters with which they are peculiarly acquainted and which can-

not be made known to the jury without such testimony, yet they cannot testify as to conclusions of fact or conclusions of law, since such matters are for the determination of the jury or the court, as the case may be. *Atlantic Coast Line R. Co.* v. *Caples' Admr.*, 110 Va., 514, 519-20, 66 S. E., 855, and cases cited; 5 Cyc. 968.

The court permitted the defendants to ask John M. Robinett, a witness introduced by the plaintiff, if he had not had a conversation with one Adams, in which he in substance stated that the defendants were entitled to the mineral interests sued for, and could hold them if they would contend for them. The object of the evidence in question was to show that the witness had made statements inconsistent with the testimony he had given in the case.

While the evidence may not have been entitled to much weight, yet it was admissible, we think, for the purpose for which it was offered.

The remaining assignment of error is based upon bill of exceptions No. 4, which omitting formal parts is as follows:

"Q. You have heretofore testified, I believe, that the boundary described in the declaration and the deed from Archibald Hunsucker to Price & Steinman runs with these lines from chestnut and pine to the point shown as a white oak fallen on the map?

"A. Yes, sir.

"Thereupon plaintiff, by counsel, propounded to the witness the following questions to which the witness made the following answers:

"Q. Mr. Wolfe, I show you a map marked 'Virginia Coal and Iron Company's map, No. 107,' and will ask you what it purports to be a map of? And if you made it?

A. It is a map of the William Robinett, Sr., land. I made this map.

"Q. Did you do the surveying?

"A. Yes, sir.

"To which said questions and answers thereto defendants, by counsel, objected on the ground that if admissible at all they were matters in chief, and, thereupon, counsel for plaintiff stated to the court that the purpose of the introduction of the said map was to show the location of the west line of the Hunsucker tract, and, thereupon, the court sustained the objection of the defendants, and refused to allow the said answers to the said questions to go to the jury, and refused to allow the said map to be introduced in evidence * * * ."

Even if the evidence were offered at the proper time the court did not err in not permitting the map to be introduced as evidence or in excluding the answers of the witness. While a private survey may be admitted as evidence of boundary between those who were parties to it, or who claim under them, it is not admissible as independent evidence against strangers, as were the defendants in this case. *Lee* v. *Tapscott,* 2 Wash. (2 Va.) 276; 5 Cyc. 965-7.

The exclusion of the answers of the witness could not have prejudiced the plaintiff, since they did nothing more than show that the map offered was based upon a survey of the Wm. Robinett land, and that the witness had made the survey.

For the action of the court in giving instruction No. 3, its judgment must be reversed, the verdict of the jury set aside, and the cause remanded for a new trial to be had not in conflict with the views expressed in this opinion.

*Reversed.*