# Staunton

CONSTANCE J. ROBINSON, SUSIE J. WILLIAMS AND MORRIS R. JOHNSON V. R. D. PETERSON AND LEANDERTON PETERSON.

September 10, 1958.

Record No. 4815.

Present, Eggleston, C.J., and Spratley, Buchanan, Miller, Whittle and Snead, JJ.

The opinion states the case.

*Dabney Overton,* for the plaintiffs in error.

*David Nelson Sutton (Sutton & Causey,* on brief), for the defendants in error.

Opinion by CHIEF JUSTICE EDWARD W. HUDGINS.*

█ Constance J. Robinson, Susie J. Williams and Morris R. Johnson, owners of a certain tract of land lying in Middlesex county, Virginia, instituted this action under Code § 8-836, as amended, against R. D. Peterson and Leanderton Peterson, owners of an adjacent tract, to have the court ascertain and designate the true boundary line of the co-terminus tracts of land. There were two trials of the case. On the first trial the jury returned a verdict for plaintiffs which the court set aside. On the second trial the jury returned a verdict for defendants on which the court entered judgment. From that judgment plaintiffs obtained this writ of error.

Both plaintiffs and defendants trace their title to a common source, R. H. Bland. Plaintiffs contend that the true location of the boundary in question is shown on a plat made by J. Arthur Cooke, surveyor, on May 29, 1956, revised on April 30, 1957. It is claimed that this plat was a relocation upon the ground of the line shown by the plat made May 10, 1901, by H. C. Farinholt, a surveyor, now deceased. Defendants contend (and successfully so in the lower court) that the true location of the boundary line is that shown on the plat made in May, 1956, by W. H. Stiff, surveyor, which, it is claimed, is a

---

* This opinion was prepared by former Chief Justice Hudgins before his death and is adopted as the opinion of the court.

relocation upon the ground of the line shown on the plat dated January 19, 1927, made by J. W. Stiff, a surveyor, also deceased.

The line in dispute is a straight line running from a "chopped pine tree" on the road, now state highway # 17, leading from Jamaica to Laneview "to a red oak" on the road from Shiloh Church to Wares Bridge. The land owned by plaintiffs was conveyed to Moses Johnson, their father, by a deed from Bland bearing date August 5, 1904, and described as follows:

"A certain tract of land containing (16) sixteen acres being in the upper part of Middlesex County, Va. and bounded as follows— beginning on the road leading from Jamaica to Laneview where said road forks with the road leading to Wares Bridge and running down said road a distance of 140 yards to a chopped pine tree and thence in a Southwesterly direction to a red oak in the cross road leading from Shiloh Church to the aforesaid Wares bridge road thence along said Cross road to the said Wares Bridge road and up said Wares Bridge road to the forks & starting point."

On the deed book in the clerk's office immediately following the certificate of the notary who took the acknowledgments to the deed there is copied the plat printed on the opposite page, with the notations thereon.

On the first trial the court, over the objection of defendants, permitted the foregoing Farinholt plat to be introduced in evidence, but on motion to set aside the verdict reached the conclusion that that ruling was erroneous for the stated reason that:

"The plat of H. C. Farinholt dated May 10th 1901 was not referred to in or made a part of the chain of title of either party to this suit and was not admissible in evidence for the purpose as used in this case.

"The court erred in allowing the plat to be introduced in evidence, and the verdict of the jury will be set aside and a new trial granted."

The decisive question thus presented is whether the Farinholt plat was admissible in evidence.

The description of the land conveyed in the deed is by tangible landmarks, easily ascertained at the time. The description of the land in the plat is entirely by courses and distances, except the names of the highways between which it lies. It would be impossible to locate the land and its boundaries upon the ground with the plat as the only guide. This is not so with the description in the deed, wherein the monuments are definitely stated and susceptible of proof with or without a surveyor's notes.

Field Notes

| | | | |
|---|---|---|---|
| 1 to 2 | S75W | 6.28 |
| 2 to 3 | N 18 W | 5.00 |
| 3 to 4 | N 12 W | 7.00 |
| 4 to 5 | N 16 W | 6.00 |
| 5 to 6 | N 2 W | 3.00 |
| 6 to 7 | N 18 E | 1.55 |
| 7 to 8 | N 40 E | 3.35 |
| 8 to 9 | S 60 E | 5.00 |
| 9 to 10 | S 65 E | 1.45 |
| 10 to 1 | S 7½ E | 20.00 |

Scale 4 Ch to inc

MOSES JOHNSON
16½ Acres

Surveyed by
H.C.Farinholt
May 10 1901

Virginia
Clerk's office Middlesex Circuit Court January 27 1909 The fore-
going deed and plat were admitted to record at 2 o'clock P.M. and
with Certificate & field Notes are truly recorded.

Teste
F.M. Eastman, Clerk

I, J. M. Revere, Clerk of the Circuit Court of Middlesex County,
Virginia, this 25th day of July, 1957, do hereby certify that the
above is a true copy of deed, recorded in the Clerk's Office of
Middlesex County in Deed Book 41, at page 147.

J. M. Revere Clerk
Circuit Court Middlesex County,
Virginia.

There is nothing in the deed that indicates that the grantors intended to convey the land described in the plat to Moses Johnson, the grantee. There are a number of discrepancies in the description of the land included in the plat and the description of the land conveyed by the deed. The deed states that the land fronts 140 yards on the road from Laneview to Jamaica. The frontage mentioned in the plat, according to the testimony of J. Arthur Cooke and other witnesses for plaintiffs, is different. The termini of the straight boundary line are described in the deed as a chopped pine tree on the boundary line to the public highway leading from Laneview to Jamaica and a "red oak in the cross road" leading from Shiloh Church to Wares Bridge road. The plat contains no reference to the named trees or other landmarks of the boundary on the ground.

If a grantor intends to convey land included in a plat, necessarily the plat is made prior to the execution of the deed, and in such a case the plat, or some reference thereto, is usually incorporated in the deed describing the land conveyed. In this case, the notation on the plat indicates that it was made May 10, 1901. The deed is dated August 5, 1904, more than three years thereafter, yet the grantor in his conveyance made no reference to the plat, and the plat contains no reference to any natural boundary or location of any specific landmark on the ground.

The Farinholt plat is not referred to or made a part of the chain of title of either plaintiffs or defendants. It is nothing more than a private plat, spread upon the deed book without proper authentication, and is insufficient to give constructive legal notice to subsequent grantees.

A private survey is admissible as evidence of a boundary line between those who are parties to it or who claim under it, but it is not admissible as independent evidence against others. *Virginia Coal & Iron Co.* v. *Ison*, 114 Va. 144, at p. 153, 75 S.E. 782; *Christian* v. *Bulbeck*, 120 Va. 74, at p. 101, 90 S.E. 661; *Sulphur Mines Co.* v. *Thompson*, 93 Va. 293, 25 S.E. 232; *Griggs* v. *Brown*, 126 Va. 556, at p. 559, 102 S.E. 212; *Broadsword* v. *Kauer*, 161 Ohio St. 524, 120 N.E. 2d 111, 46 A.L.R. 2d 1309.

Plaintiffs contend that the Farinholt plat was admissible in evidence on the ground it was an ancient document.

The rule admitting ancient documents as evidence is one that merely dispenses with proof of the authenticity of such documents. The question of the relevancy and admissibility as evidence is not

affected by the fact that the paper offered is an ancient document. It is no more admissible on that ground than if it were a newly executed instrument. 7 Michie's Jur., Evidence, § 111, p. 462.

There is no evidence tending to show who authorized Farinholt to make the plat or for what purpose it was made. It is not properly authenticated. Merely because his name and a date were on it, and the fact that it states on its face it is Moses Johnson's property, does not connect it with the plaintiffs' chain of title. "...........The theory on which such ancient maps are received is that where the matter in controversy is ancient and not susceptible of better evidence, traditionary reputation of matters of public and general interest is competent evidence of the matters to which it relates...... An ancient map, however, made by a private person, or for which no official authorization or recognition appears, is inadmissible as a general rule......." 8 Amer. Jur., Boundaries, § 103, p. 819.

The trial court committed no error in setting aside the verdict returned by the jury in the first trial and in refusing to admit the Farinholt plat in the second trial.

■ The second question presented is whether the court committed reversible error in calling C. T. Fletcher, a surveyor, as a court witness, who, under a previous order of the court, had made a survey of the land claimed by plaintiffs and filed it with the papers in the case.

It appears from the record that after the litigants had joined issue and before any evidence was introduced, the court, on motion of the plaintiffs and without objection of defendants, entered an order directing C. T. Fletcher to survey the boundary lines of plaintiffs' 16 acres as claimed by them in their pleading. This was done and Fletcher filed his report some time before the first trial, to which report no exceptions were made by either party. Thereafter the respective litigants retained other counsel, neither of whom deemed it advisable to call Fletcher as a witness in the first trial.

In the second trial the court, of its own motion and over the objection of plaintiffs, called C. T. Fletcher as a court witness, thereby giving both sides an opportunity to cross examine him. Plaintiffs contend that they were claiming the boundary line as shown on the Cooke plat, that the defendants were claiming the line as shown by the W. H. Stiff plat, and that the Fletcher plat was inconsistent with both of them. Plaintiffs' further objection to the introduction of this plat is thus stated in their brief:

"In the making of this survey, this deed was construed arbitrarily as conveying only sixteen (16) acres of land, no more, no less, although it is universally accepted that acreage is the least reliable of all the indices of the extent of the land conveyed by a deed. Therefore, the Fletcher survey and plat were irrelevant to the issue."

Plaintiffs are not in a position to successfully maintain this contention. Indeed they are estopped from so doing. In their motion for judgment they allege:

"Second: The quoted description of your petitioners' 16 acres of land shows that it is bounded on three sides by public roads and by a straight line on the other side. This line begins at a point 140 yards in the direction of Saluda from the intersection of the road leading to Wares Bridge with Route 17 and runs in a Southwest direction until it reaches the road from Shiloh to Wares Bridge and cuts off *exactly* 16 acres of land on the Northwest side of the line. This line now separates your petitioners' land from the land of R. D. Peterson and Leanderton Peterson and a dispute has arisen with the Petersons about the location of the line. (Italics supplied.)

"Third: Your petitioners move the Court to establish the boundary line between their land and the land owned by the Petersons as your petitioners have in 'Second' above state that it is located and should be established."

On this allegation and prayer the court entered the following order:

"On motion of the plaintiffs, it is considered by the Court and so ordered that C. T. Fletcher, Highway Engineer, shall survey the boundary lines of the plaintiffs' sixteen acres of land as claimed by them in their motion for Judgment and mark the line between the land of the plaintiffs' and the land of the defendants' on the ground with good temporary wooden stakes and report to the Court in writing so soon as he has completed the survey and file with his report a plat of *exactly the sixteen acres of land described in the plaintiffs' motion for judgment*. The Clerk of this Court shall forthwith furnish C. T. Fletcher a copy of this order and of the plaintiffs' motion for judgment." (Italics supplied.)

Fletcher testified that the plat of plaintiffs' land was made in strict compliance with plaintiffs' allegations and the order of the court. Plaintiffs never withdrew their motion to have Fletcher make the survey, nor did they except to the report and plat filed by him.

It is not the general practice in this Commonwealth for a court,

of its own motion, to call a witness in a civil case. *Blackwood Coal & Coke Co. v. James,* 107 Va. 656, 60 S.E. 90; *Pendleton v. Commonwealth,* 131 Va. 676, at p. 705, 109 S.E. 201.

However, this is a statutory proceeding, where under Code § 8-838 it is provided: "The judge of the court in term time or in vacation may direct such surveys to be made as he may deem necessary."

Under the circumstances, we find no reversible error in the action of the court in calling C. T. Fletcher as a court witness.

Plaintiffs' third and last contention is that there was not sufficient evidence to support the instructions given at the request of defendants on the question of adverse possession.

The evidence for defendants, and upon which the jury based its verdict, tends to show that the true boundary line between the lands of the parties is indicated by the line marked A - B, as shown on the plat printed on the following page, filed as an exhibit in the case.

This plat was made in May, 1956, by W. H. Stiff, surveyor, and is a re-survey of the property conveyed to defendant Rebedee Peterson, and contains landmarks on the ground that coincide with the plat made by J. W. Stiff, surveyor, on January 19, 1927, and incorporated in the deed from J. A. Moody, bearing date October 27, 1927, under whom defendants claim.

The oral testimony tends to show that while the locations of the two highways have been somewhat changed since 1904, and the pine and red oak trees have been destroyed, W. H. Stiff ascertained the termini A and B of the boundary line on the plat to be the same as that stated in the deed to Moses Johnson, under whom the plaintiffs claim.

Rebedee Peterson testified that since October, 1927, when the property was conveyed to him, he had been in possession of the land, claiming under his deed the boundary line between him and the Moses Johnson tract to be as established by J. W. Stiff, as shown in his plat of January, 1927, and recorded as a part of his deed; that he cut and removed the timber, cleared the woods and bushes up to this boundary line, built a wire fence thereon, thus enclosed a part of it and used it as a pasture until 1943 or 1944, when he bulldozed it and cultivated it continuously thereafter. Both he and Moses Johnson were present when J. W. Stiff ran the boundary line and both recognized it as the true boundary between the two tracts.

Other witnesses testified that the line A - B on the Stiff plat runs

along the old wire fence built by Peterson, remnants of which still remain.

Leanderton Peterson testified that in 1953 he bought a part of the land that his father had acquired from J. A. Moody, on which he built a home, with a drainage field for his sewage to the east of what had always been recognized as the true boundary line between the two tracts of land; that if the boundary line is as claimed by plaintiffs it would come within seven feet of his new home and would include the greater part of the drain field for his sewerage system.

We find no reversible error in the action of the court in giving the instructions on adverse possession.

For the reasons stated, the judgment of the trial court is

*Affirmed.*