## Richmond

VINCENT W. BRADLEY, TRUSTEE, ET AL. v. MILTON E. CANTER, ET AL.

MILTON E. CANTER, ET AL. v. VINCENT W. BRADLEY, TRUSTEE, ET AL.

April 25, 1960.

Record Nos. 4991, 5057.

Present, Buchanan, Miller, Whittle, Snead and I'Anson, JJ.

The opinion states the case.

*Dabney Overton,* for Vincent W. Bradley, Trustee, et al., appellants in Record No. 4991 and appellees in Record No. 5057.

*Lawrence M. Traylor, Milton E. Canter* and *Louis Urow,* for Milton E. Canter, et al., appellees in Record No. 4991 and appellants in Record No. 5057.

SNEAD, J., delivered the opinion of the court.

On January 28, 1958, Milton E. Canter and Louis Urow, beneficiaries under a second deed of trust for $15,000, dated March 29, 1954, given by Blundon Investment Corporation on property in Northumberland county known as "Burgess Farm", filed their bill against Vincent W. Bradley and Lloyd E. Turner, trustees under a first deed of trust on the property, dated September 28, 1951, and Lloyd R. Turner, the holder of the $5,000 note of the corporation secured thereby. Complainants alleged, among other things, that they purchased the property at a foreclosure sale on December 14, 1957, from Turner and Bradley, trustees, for $25,000; that the trustees were demanding settlement on January 29, 1958, based on a proposed accounting submitted by them which was improper and excessive; that complainants were willing to pay into court a sum sufficient to cover the amount demanded by the trustees; that they were without an adequate remedy at law, and that they would suffer irremediable loss.

The bill prayed for an injunction *pendente lite* enjoining the settlement of the foreclosure sale and enjoining any further sale of the property under the first deed of trust, dated September 28, 1951, and that the court determine to whom payment should be made and make such payments.

The litigants will be referred to at times as complainants and defendants in accordance with the positions they occupied in the court below.

Complainants deposited with the court $13,041.14. They had previously paid Bradley and Turner, trustees, $1,250 as a deposit

on the purchase price. By decree, dated January 28, 1958, Bradley and Turner, trustees, were restrained and enjoined for a period of sixty days from making settlement of their accounts as trustees under the sale and from making any further sale under the deed of trust. Defendants filed a plea in abatement. In it they averred that the bill indicated that defendants Lloyd E. Turner and Lloyd R. Turner were non-residents of Virginia and that defendant Bradley was a resident of the city of Alexandria; that § 8-38, Code 1950, provides that an action at law or suit in equity may be brought in any county or corporation "(1) Wherein any of the defendants may reside;" and that there were no grounds stated in the bill which gave the court venue pursuant to any of the provisions of the statute.

By decree of March 28, 1958, F. V. Watkins, Commissioner of Accounts for Northumberland county, was made a party defendant to the cause; the injunction entered against Bradley and Turner, trustees, was extended for 100 days; Watkins was restrained and enjoined for a like period of time from taking any action in the settlement of the trustees' accounts, and the court reserved its decision on the plea in abatement. Later the plea was overruled and defendants filed their answers, and the cause came on for an *ore tenus* hearing.

At the conclusion of the evidence, the court by its decree of August 25, 1958, determined, *inter alia*, "That the original indebtedness incurred and due Lloyd R. Turner under his deed of trust was in fact $3,500.00 instead of $5,000.00—the said Lloyd R. Turner not being a *bona fide* purchaser of said note for value in that the consideration therefor was paid directly to the makers of the note and grantor in the deed of trust; that the said Lloyd R. Turner is due the said $3,500.00 with interest thereon at 5% per annum but all subject to credits of $125.00 on March 28, 1952; $125.00 on September 28, 1952; $125.00 on November 27, 1953; and $600 on August 24, 1954; making a total due as of this date of $3,480.62." He was allowed the sum of $800 as and for his attorneys' fees instead of $5,400, the amount claimed. Bradley and Turner, trustees, were allowed 5% or $1,250 as trustees' commission on the sale of the property.

The decree directed that James C. Toomey, temporary receiver of Blundon Investment Corporation, be paid $1,562.17, one-half of his fee and expenses, out of the proceeds due Lloyd R. Turner because of orders of the United States District Court. It was directed

that the other one-half of the receiver's fee and expenses be held by the court out of the proceeds due Canter and Urow until the further order of the court.

The entry of this decree is the basis of the appeal by Bradley and Turner, trustees, and Lloyd R. Turner, beneficiary under the deed of trust, in Record No. 4991. Their assignments of error challenge the correctness of the court's rulings in entertaining the bill of complaint when it stated no cause for equitable relief; in overruling their plea in abatement; in adding F. V. Watkins, Commissioner of Accounts, as a party defendant; in calling Urow as a court witness; in permitting the introduction of certain evidence; in holding Lloyd R. Turner was not a *bona fide* purchaser of the note in question; in refusing to allow in full defendants' claims for attorneys' fees and expenses, and in entering judgment as set forth in the decree.

Complainants, in their assignments of cross-error, question the court's actions in overruling their motion for the return to them of an amount equivalent to one-half of the fees and expenses awarded by the Federal court to Toomey, temporary receiver; in awarding Lloyd R. Turner $800 for his attorneys' fees; in allowing defendant trustees $1,250 for commissions on the sale of the property, and in refusing to allow the defense of usury against the $5,000 note.

By decree of October 23, 1958, complainants' motion to have returned to them an amount equivalent to one-half of the fees and expenses awarded Toomey, temporary foreign receiver of the corporation, was overruled. Complainants filed their notice of appeal and assignment of error to the entry of this decree. The appeal was granted and it constitutes Record No. 5057. The error assigned is the court's action in overruling their motion set forth above, which as stated is one of their assignments of cross-error in Record No. 4991. The two appeals are combined and disposed of in this opinion.

■ The court under its broad equity powers had jurisdiction to entertain the bill of complaint and give equitable relief. A copy of the trustees' proposed settlement account was filed as an exhibit with the bill. It was alleged in the bill that the accounting was improper, unlawful, and excessive; that a demand for settlement had been made by the trustees for the next day; that the trustees would make immediate disbursement of the funds in accordance with the proposed accounting, and that in such event many suits would be required to recover the disbursements made and later found to be excessive or unlawful. It further alleged that the proposed disbursements would

diminish the credit to which complainants were entitled toward satisfaction of the obligation secured by their second deed of trust which had been reduced to judgment and that some of the judgments to be obtained would be uncollectible and thus the complainants would suffer irremediable loss. These allegations established grounds for equitable relief.

Defendants argue, however, that the charges complained of were subject to the control of the commissioner of accounts; that complainants had the right to challenge the account before him, (§§ 26-15 and 26-29, Code 1950.) and that this procedure would have provided full, adequate and complete relief to them. But the court's equitable jurisdiction was not thereby ousted. Although a statute may furnish a remedy at law, that does not necessarily take away equity's jurisdiction over the subject. In *Overnite Transportation Co.* v. *Woodfin,* 196 Va. 747, 752, 85 S. E. 2d 217, we said: "Courts of equity, having once acquired jurisdiction, do not lose it because jurisdiction of the same matters are given to law courts unless the statute conferring such jurisdiction uses prohibitory or restrictive words."

Although none of the defendants resided in Northumberland county when the suit was instituted, yet the real estate in question is situated there and the trustees' accounts could only be settled in that jurisdiction. Later the court considered that full justice could not be done without the presence of F. V. Watkins, Commissioner of Accounts, who was a resident of Northumberland county and he was made a party defendant under § 8-129, Code 1950. This was a proceeding to determine the respective rights of the litigants in the proceeds paid into court from the sale of land which required a determination of the amount of liens against it. The bill prayed that the court pay to proper persons all moneys under its control. It was a proceeding *quasi in rem.* It dealt with trust funds and the account that was required to be filed in Northumberland county and it was proper for the circuit court of that county to administer the funds and determine the correctness of the account. A court has jurisdiction to decide the rights of a non-resident defendant in a thing within its territorial jurisdiction, even though the court acquired no jurisdiction over the defendant by personal service. 14 Am. Jur., Courts, § 190, p. 384. The addition of Watkins was not necessary but harmless. We, therefore, hold that the venue of the proceedings was proper and the court did not err in overruling defendants' plea in abatement.

■ Defendants assert that the court erred in calling complainant Louis Urow as a court's witness. At the beginning of the hearing there was considerable discussion between the court and counsel as to who had the burden of going forward with the evidence. Defendants maintained that the burden was upon the complainants, and complainants took the position that it was the obligation of the defendant trustees to justify their proposed distribution of the proceeds of sale, especially since the propriety of it had been questioned by the commissioner of accounts, and because there were other lien creditors not represented in the proceeding whose interests required that the trustees justify their proposed accounting. According to the narrative statement of the testimony, the court said: "that since it had taken jurisdiction of the matter of the accounting by the trustees, it would determine the matter fully in this proceeding, and that the primary obligation of the trustees to justify their proposed disposition of the proceeds of sale was independent of the adversary position of these complainants, and would obtain even if complainants withdrew from the cause." Complainants then stated they were willing to go forward with the evidence if they could call the defendants to testify at the outset, "since all pertinent evidence was within their peculiar knowledge." The court was informed by counsel for defendants that defendants were not present. Whereupon the court called complainant Urow as a witness, who testified that he was thoroughly familiar with the subject matter of the suit as he had participated in drafting the bill, had signed and sworn to it, and that the allegations contained therein were true to the best of his knowledge and belief.

Counsel for defendants undertook to cross-examine Urow with respect to his knowledge pertaining to the allegations in the bill regarding defendants' lack of financial responsibility and the resultant irremediable loss complainants would have sustained had settlement been made with the trustees on the basis of the proposed account and thereafter handled by the commissioner of accounts. The court sustained complainants' objection to this line of cross-examination, and ruled that such testimony was immaterial since the court was satisfied it had equitable jurisdiction to entertain the bill and that an injunction had theretofore been granted based on the allegations in it.

After excepting to this ruling, counsel for defendants proceeded to cross-examine Urow at some length concerning the basis of the

allegations that complainants had no adequate remedy at law; that defendants had failed to credit the maker of the note with $1,500 and $600, and that the proposed distribution of attorney's fees totalling $5,400 were excessive, unwarranted and unlawful. Urow testified that he had asked James C. Gregg, of counsel for defendants, prior to the commencement of the suit whether defendant trustees would give complainants written assurance that no distribution would be made until the commissioner of accounts had passed upon their propriety if complainants paid the entire sum demanded, and that Gregg informed him that no such assurance would be given. He also testified that he doubted the ability of defendant trustees to respond to a substantial judgment.

It is not the general practice in this State for a court, of its own motion, to call a witness in a civil case. *Robinson* v. *Peterson*, 200 Va. 186, 192, 193, 104 S. E. 2d 788; *Blackwood Coal Co.* v. *James*, 107 Va. 656, 659, 60 S. E. 90. It is a matter resting in the sound discretion of the court and should be exercised with great care. 98 C. J. S., Witnesses, § 350, p. 70. However, under the facts and circumstances in the present case we find that the chancellor did not abuse his discretion by calling Urow as a court's witness.

We turn now to defendants' contentions that the court erred in admitting certain evidence and in holding that Lloyd R. Turner was not a holder in due course of the $5,000 note. In the latter part of 1952 Lloyd R. Turner delivered the note, which was in default, to Joseph H. Schneider, his Washington attorney for collection. Later Miss Louise Blundon instituted a chancery suit against Blundon Investment Corporation; Ben Lindas, its president; Bradley and Turner, trustees; Lloyd R. Turner, noteholder, and other persons in the Circuit Court of Northumberland county. (*Blundon* v. *Blundon Investment Corporation, et al.*) In that cause complainant, who was secretary of the corporation, charged that Lindas had defrauded her of certain sums of money and property including the $5,000 note here involved and alleged that defendants Bradley and Turner, trustees, and Lloyd R. Turner had participated in this fraud with respect to the $5,000 note. Schneider associated Virginia counsel with him in defending the suit. An answer was filed on behalf of Lloyd R. Turner, noteholder, but counsel did nothing further in the case except to enter an appearance for other defendants. In the meantime, a foreclosure sale of the property had been advertised by the trustees and they were enjoined in Miss Blundon's suit from proceeding with

it. Later the bill of complaint was dismissed on motion of Lindas and Miss Blundon, the complainant.

After defendant trustees were free to institute foreclosure proceedings, the property was again advertised for sale. In the meantime T. D. Harris, a stockholder of the corporation had instituted a suit against it and others in the United States District Court for the District of Columbia, which resulted in the appointment of James C. Toomey, as temporary receiver. Defendant trustees and Lloyd R. Turner were not named as parties defendant and the suit did not attack the $5,000 note or deed of trust. Upon representation to the court by the receiver that he could negotiate a sale of the property in question for a price sufficient to discharge the outstanding trusts and liens, the court enjoined defendant trustees from conducting the advertised foreclosure sale. Later it developed that the receiver could not negotiate such a sale, and the injunction was dissolved. Defendant trustees again advertised the property and sold it to complainants on December 14, 1957. Schneider, defendants' attorney, in conjunction with complainants, appeared in the proceedings to oppose the issuance of the temporary injunction and thereafter sought a dissolution of it. Schneider testified that the greater portion of the time for which he was seeking compensation was spent in conferring with defendants, his clients.

In the present case complainants introduced in evidence, over the objection of defendants, paragraph 8 and a part of paragraph 9 of the bill, as well as exhibit "A" attached, and Lloyd R. Turner's answer thereto in the case of *Blundon* v. *Blundon Investment Corporation, et al., supra.* Exhibit "A" is a statement of receipts and disbursements furnished by Ben Lindas, president of the corporation, in reference to the Turner loan. Under receipts there is listed: "Net amount from Turner loan $3,500.00", and under disbursements there is listed: "Two years interest paid on Turner loan at 6% $600.00". In his answer, Lloyd R. Turner stated in part:

"2. He denies that he unlawfully and wrongfully conspired with anyone to defraud the complainant or the defendant corporation of their properties, or made any representations to your complainant or the defendant corporation relative to the purpose of said loan or used the proceeds therefrom as alleged in paragraph 8 of the Bill of Complaint filed herein. He admits that he purchased said negotiable promissory note and paid value to said defendant corporation before the said note was due and payable, and that he had no

knowledge actual or constructive of any attempt by anyone to defraud and that he purchased said note in good faith. He denies that he has withheld any money from the said complainant or defendant corporation as alleged in paragraph 8 of the Bill of Complaint filed herein.

"3. The defendant denies paragraph 9, sub-paragraph XVIII and avers that said defendant corporation is indebted to him."

The $5,000 note in question was made payable to the order of Anna Howard, who endorsed it payable to Lloyd R. Turner before maturity and he is presumed to be a holder in due course. Complainants contend that Anna Howard was a mere "straw" person as paragraph 8 of the bill in *Blundon* v. *Blundon Investment Corporation, et al., supra,* alleged the consideration for the note passed directly from Lloyd R. Turner to the maker corporation; that the above exhibits show that the amount actually paid for the note was $3,500, and that there was a payment of $600 made on it. On the other hand defendants say the exhibits constitute inadmissible hearsay evidence and are without probative value. Assuming, but not deciding, that the evidence objected to was admissible, it is not sufficient to prove a payment of $1,500 was made at the time the note was given and another payment of $600 was made by Lindas, as was alleged in the bill in the case at bar. There is no other evidence of probative value in the record to support such alleged credits, which were allowed by the court below. We hold these credits were improperly allowed and that the record does not support a finding that Lloyd R. Turner was not a holder of the note in due course.

■ Complainants did not file a plea of usury, but during their final argument to the court below they urged that the transaction was usurious and that the noteholder must be deemed to have forfeited all interest. The court ruled that the defense of usury was not available to complainants. We find no error in the court's action in refusing to allow this defense.

■ The Turner deed of trust provides, among other things, that it secures the payment of the note, interest, "and all costs and expenses incurred in respect thereto, including reasonable attorney fees incurred or paid by the said parties of the second part [trustees] or substituted trustee, or by any person hereby secured, on account of any litigation that may arise in law or equity in respect to this trust or the property hereinafter mentioned * * *." It also provides "that if said property be advertised for sale and not sold the trustee

shall be entitled to one-half commission computed on debt secured."
There is also a provision for the payment of a trustees' commission
in event of a sale.

, Defendant trustees include in their proposed settlement account
for legal services rendered them fees aggregating $5,400. Of this
amount $2,500 was claimed for services rendered in the case of
*Blundon* v. *Blundon Investment Corporation, et al.*; $2,000 in the
case of *Harris* v. *Blundon Investment Corporation, et al.*, and $900
for professional services rendered them in connection with the two
enjoined foreclosures and the completed sale. Schneider did not keep
an accurate record of time consumed by him, but he estimated 300
hours. Bradley and Turner were experienced trustees, the former
being a member of the Virginia Bar and it is contended by com-
plainants they did not need legal assistance with regard to a fore-
closure sale. The trial court concluded that an allowance of $800
to Lloyd R. Turner, noteholder, for all legal fees was reasonable.
Under the facts and circumstances prevailing, we cannot say that the
court abused its discretion in making this allowance and it will not
be disturbed.

The court properly allowed defendant trustees 5%, or $1,250,
on the completed sale. The court, likewise, did not err in refusing
to allow defendant trustees one-half commissions on each of the
two foreclosure sales which were enjoined. We observe that neither
injunction was obtained at the instance of the debtor corporation and
grantor under the deed of trust. The general rule is that a trustee
under a deed· of trust is not entitled to compensation where there
has been no sale by him, unless the deed of trust provides for such
payment. *Dillard* v. *Serpell*, 138 Va. 694, 123 S. E. 343.

In *George* v. *Forest Glen Land Co.*, 281 F. 577, 581, it is said:
"* * * In our view, the provision that, if the property shall be
advertised for sale and not sold, the trustee shall be entitled to one-
half the commission to be computed on the amount of the debt, relates
to cases where there is a redemption of the land, and where, therefore,
one-half the amount of the debt is a fair basis upon which to compute
the commission."

Our next concern is whether the court erred in overruling
complainants' motion for the return to them of an amount equivalent
to one-half of the fees and expenses awarded the receiver of the
corporation by the United States District Court for the District of
Columbia, which amount has been earmarked for payment out of the
funds belonging to complainants.

The two orders of the Federal court, which directed payment and apportioned the payment of such fee and expenses equally between the beneficiaries of the first and second deeds of trust were introducd in evidence by defendants and payment requested accordingly.

Succinctly stated, the contention of complainants is that the District Court had no jurisdiction to enter the orders complained of; that the orders are void and not entitled to full faith and credit under the Constitution.

The priority and extent of claims under a deed of trust upon land are determined by the courts of the State where the land lies. In *Mullane* v. *Central Hanover Tr. Co.*, 339 U.S. 306, 313, 70 S. Ct. 652, 94 L. ed. 865, the court stated:

"* * * It is sufficient to observe that, whatever the technical definition of its chosen procedure, the interest of each state in providing means to close trusts that exist by the grace of its laws and are administered under the supervision of its courts is so insistent and rooted in custom as to establish beyond doubt the right of its courts to determine the interests of all claimants, resident or nonresident, provided its procedure accords full opportunity to appear and be heard."

In the case of *In re American Fuel & Power Co.*, 151 F. 2d .(6th Cir.) 470, 481, it is said: "It seems well settled that the validity and effect of a mortgage lien should be determined by the law of the state in which the property upon which the lien is asserted is located." It is also recognized that a receiver appointed by a federal court takes property subject to all liens, priorities or privileges existing or accruing under the law of the State. *Marshall* v. *New York*, 254 U.S. 380, 385, 41 S. Ct. 143, 65 L. ed. 315.

Complainants argue that the receiver did not incur any expense or perform any services in connection with the trust. Clearly had defendant trustees under these circumstances proposed to pay the fee of the receiver as an expense of executing the trust without the federal orders directing payment, they would not have been allowed to do so by the commission of accounts or the circuit court. The orders of the federal court cannot effectively make the receiver's fee "an expense of sale" when his services are wholly unrelated to the trust and the sale.

The interests of the beneficiaries under the deeds of trust vested prior to the appointment of the receiver. The integrity and priority

of the trust liens were not challenged. They did not seek, acquiesce in, or benefit from the receivership. In 104 A. L. R. p. 996, it is stated: "In most instances the courts have refused to allow the expenses incurred during receivership, such as compensation for the receiver and counsel appointed by him, court costs, taxes and betterments and improvements, to be charged against the mortgagee, where the receivership was conducted solely in the interests of the unsecured creditors." What was said in *Nicholson* v. *Western Loan & Building Co.*, 60 F. 2d (9th Cir.) 516, 517, seems to be applicable in the present case: "It would be obnoxious to good conscience and taking property of the loan company without due process, to subject the first mortgage to charges and expenses in the receivership, upon the facts disclosed in the record."

The validity of the federal court orders are subject to collateral attack. In *Richardson & als.* v. *Seevers' Adm'r.*, 84 Va. 259, 266, 4 S. E. 712, we held that the United States District Court was without jurisdiction to enter a decree fixing and attaching liens upon certain lands. There we said: "* * * [W]e consider it to be well settled that a judgment by that tribunal, without authority or jurisdiction, or which exceeds or lies without the power of the court, is necessarily void, and may be shown to be so in any subsequent or collateral proceeding; and this applies to all courts whether of superior or of inferior jurisdiction, because no authority derived from the law can transcend the source from whence it came."

The full faith and credit clause of the Constitution does not require recognition of a judgment of a sister state when it is determined such judgment was rendered without jurisdiction. *Treinies* v. *Sunshine Mining Co.*, 308 U. S. 66, 60 S. Ct. 44, 84 L. ed. 85. Recognition of a judgment is likewise not required when it is invalid because it is offensive to the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States. *Hanson* v. *Denckla*, 357 U. S. 235, 78 S. Ct. 1228, 2 L. ed. 2d 1283. A judgment of a Federal court is not entitled to greater weight than is afforded a state court in a like case. See *Pittsburgh &c Railway* v. *Loan & Trust Co.*, 172 U. S. 493, 19 S. Ct. 238, 43 L. ed. 528.

Our conclusion is the Federal court was without jurisdiction to impair the existing liens of the deeds of trust by directing that payment to the temporary receiver be apportioned equally between the beneficiaries of the first and second deeds of trust. Such being the case, the orders should not be enforced as to complainants, Canter

and Urow, and the trial court erred in overruling their motion for a return of their portion of the fee and expenses earmarked for that purpose. And as has been said, it was also error to allow credits of $1,500 and $600 on the note in question. A fee in the sum of $350 is allowed counsel for defendants (appellants in Record No. 4991) for services rendered in the court below and for prosecuting the appeal.

For the reasons stated, the decree appealed from in Record No. 4991 is modified and affirmed and the decree appealed from in Record No. 5057 is reversed; the case is remanded for the entry of a decree or decrees not inconsistent with the views herein expressed. Costs are assessed against complainants Canter and Urow.

*In Record No. 4991 the decree is modified, affirmed and remanded.*
*In Record No. 5057 the decree is reversed and remanded.*