367 S.E.2d 778

**Edgar F. NEWCOME, Leroy Newcome, et al and Clark B. Frame and Wesley W. Metheney**

v.

**Wendell TURNER, et al., and Swift Energy Co., etc.**

**No. 17457.**

Supreme Court of Appeals of West Virginia.

April 1, 1988.

---

**310**

Clark B. Frame, Wesley W. Metheney, Wilson, Frame & Metheney, Morgantown, for Newcome, Frame and Metheney.

John Lewis Marks, Clarksburg, for Swift Energy.

Wendell B. Turner, Charleston, for Turner.

PER CURIAM:

This case is before the Court upon the appeal of Clark B. Frame and Wesley W. Metheney, counsel for the Newcomes, the plaintiffs in the underlying action, from orders entered by the Circuit Court of Taylor County which awarded the appellees, defendants in the underlying action, Wendell and Jane Turner and Swift Energy Company, attorney fees in excess of $22,-000 and assessed them against the plaintiffs' attorneys, Clark B. Frame and Wesley W. Metheney. The appellants contend that the trial judge was clearly erroneous. We agree.

The underlying case was a declaratory judgment action filed by attorneys Frame and Metheney for the Newcomes, pursuant to *W.Va.Code*, 55–4–31 [1945], to settle a boundary dispute.[1] Neither monetary damages nor injunctive relief was requested.[2] The plaintiffs, Newcomes, and defendants, Turners, own adjoining real estate with a disputed common boundary in Monongalia County. Defendant, Swift Energy Company, leased property near that boundary from the Turners in 1982 and placed a gas well on that property.

In their complaint, the Newcomes' attorneys, the appellants, alleged two grounds for relief, adverse possession and ownership through a deed. Most of the evidence presented at the declaratory judgment proceeding concerned this second allegation.

The Newcome and Turner properties were at one time, a single tract. In 1892 the tract was divided (other divisions since 1892 have occurred). The common boundary for the initial division of the tract is listed in the 1892 deed, and all subsequent deeds, as a certain distance from "the county road." This call remains as the boundary between the Newcomes and Turners. No metes and bounds description for this boundary appears in any surface deed description. Currently, the county road that divides the Newcome and Turner properties

---

1. *W.Va.Code*, 55–4–31 [1945] states, in pertinent part:

Any person having a subsisting interest in real estate and a right to possession, or to the possession of some share, interest or portion thereof, upon petition filed in the court which would have jurisdiction in an action of ejectment concerning such real estate, shall have the right to have ascertained and designated by the said court, the true boundary line or lines to such real estate, as to one or more of the coterminous landowners. Petitioner in his petition shall state whether his interest is in fee, for life, for a term or otherwise, and shall describe with reasonable certainty said real estate and the boundary line or lines thereof which he seeks to establish. A plat showing such real estate and boundary line or lines, filed with the petition, may serve the purposes of such description.

The petitioner shall make defendants to said petition all persons having a present interest in the boundary line or liens sought to be ascertained and designated,....

2. *W.Va.Code*, 55–4–28 [1923] states: "Nothing in this article shall prevent the plaintiff from recovering mesne profits, or damages done to the premises, from any person other then [sic] the defendants, who may be liable to such action."

is State Secondary Route 119/8. The Newcomes disputed that Route 119/8 was "the county road" in 1892. Another, apparently older, abandoned road runs between the two properties. The Newcomes contended that this road is "the county road" referenced in the 1892 deed. If so, then the disputed area would be the plaintiffs, Newcomes' property.

Plaintiffs' expert, an engineer, examined two topographical maps, made in 1883 and 1894. The 1883 map showed one road between the properties. The 1894 map showed two roads, one of which appeared, to him, to be currently designated Route 119/8. He could not determine whether the additional road was constructed prior to the 1892 deed.

Based on these maps, tax maps, the calls in the deeds, the natural monuments noted in the deeds, and discussions with persons familiar with the two roads, he opined that the old abandoned road was "the county road" described in the 1892 deed and that currently designated Route 119/8 was the additional road that appears in the 1894 topographical map. *See* M.J., *Boundaries* § 33–35 [1976]; 5C M.J. *Deeds* § 23–27 [1983] concerning the use of extrinsic evidence to determine the boundaries of property vaguely described in deeds.[3]

The defense presented two 1903 coal severance conveyances made by the plaintiffs' and defendants' predecessors in title. The conveyances were made on the same day to the same coal company. The descriptions contained in the coal conveyances specifically address the disputed area in terms of metes and bounds. There is no reference to any road in the coal severance deeds. The handwritten descriptions of the property in both deeds appear identical. It was never ascertained who performed the survey which determined the calls contained in the coal conveyances. Based on these de-scriptions, the defendants' expert surveyor opined that the boundary is Secondary Route 119/8.

On cross-examination, the defendants' surveyor admitted that it was possible, given the purposes of the coal conveyances, that the surveyor for the 1903 conveyances may have ignored the surface monuments, and in fact, may have used a third road in making the calls. He also admitted that all subsequent titles to both properties use the description contained in the 1892 deed, and do not reference the calls contained in the coal conveyances. Finally, defendants' expert testified that without the metes and bounds description of the boundary contained in the coal severance conveyances, "the county road" could not be determined through survey evidence.

Following the plaintiffs' case, and at the close of the evidence, motions for a directed verdict were made and renewed by the defendants. Each was denied. The jury found that State Secondary Route 119/8 was the road referenced in the 1892 deed and that the Newcomes were not adverse possessors of the area.

Later, the defendants moved for assessment of attorneys' fees in excess of $22,000 against plaintiffs' counsel. The trial judge granted the motion, and made the following findings:

3. The boundary line between the Turner and Newcome properties is described by identical metes and bounds descriptions in both a deed in the Turner chain of title recorded in Deed Book 38, at page 262 [the coal severance conveyance] in the said clerk's office; and in a deed in the Newcome's chain of title recorded in Deed Book 28, at page 80 [the coal severance conveyance] in the said clerk's office.

---

3. Plaintiffs also presented testimony from various persons concerning their alternate ground for relief, adverse possession. Beginning with the parties' fathers, their predecessors in title, the Newcomes had rented the area where the well is now located for several years. The Newcomes also issued hunting licenses for the area. Defendant Turner admitted that neither he nor the Newcomes actually had a survey conducted of the property prior to the suit and that he "didn't know exactly where the line hit the county road." Further, Mr. Turner admitted that he offered to purchase a right-of-way on the disputed property from the Newcomes in the 1970's. The defendants presented testimony that the Newcomes used the property with the Turners' permission.

4. The plaintiffs' attorneys, Clark B. Frame and Wesley Metheny [sic], either failed to conduct a title search in connection with this boundary dispute litigation or purposely ignored the record evidence of the location of the boundary line.

5. At the trial in this case, the plaintiffs presented no survey evidence of ownership of any portion of the 9–acre tract. The plaintiffs' attorneys procecuted [sic] this lawsuit without causing a boundary line survey to be conducted.

6. At the trial in this matter, the plaintiffs failed to offer evidence which even if believed would have been sufficient to have supported a claim for adverse possession of any portion of the Turner property.

7. Such filing and prosecution of this lawsuit in the face of clear record ownership by the Turners, and without support by survey evidence, was frivolous, vexatious, wanton, and without just foundation, and could not be supported by a good faith argument for the application, extension, modification or reversal of existing law.[4]

I

Clearly, the trial judge, in finding number 7, applied our holding in the syllabus in *Daily Gazette Co., Inc. v. Canady*, 249 W.Va. 175, 332 S.E.2d 262 (1985):

A court may order payment by an attorney to a prevailing party reasonable attorney fees and costs incurred as the result of his or her vexatious, wanton, or oppressive assertion of a claim or defense that cannot be supported by a good faith argument for the application, exten-

sion, modification, or reversal of existing law.

The Newcomes have a statutory right to bring the action. The trial judge's two previous denials of the Turners' motions for directed verdicts suggest that the action was not vexatious.[5] However, the trial judge assumed that there is West Virginia law which gives controlling effect of descriptions contained in a subsurface conveyance (which is not referenced in a surface deed description) on a vague surface deed description. Based on this assumption, the trial judge found that the action was prosecuted in bad faith, as the Newcomes' attorneys failed to acknowledge the descriptions contained in the subsurface conveyances and also survey the property based on the calls contained in those conveyances.

The appellants contend that their failure to address the coal severance conveyances (of which they admittedly were aware) in determining the boundaries was due to their belief that the surface deed descriptions, not the descriptions in the subsurface conveyances, control the determination of the surface boundary. The appellees assume that the trial judge's assertion that the subsurface descriptions control the surface boundary is correct, and contend that the trial judge's findings as to the appellee's conduct cannot be overturned unless "clearly erroneous." *Sally–Mike Properties v. Yokum*, 179 W.Va. 48, 365 S.E.2d 246 (1986). If the trial judge's assumption concerning the effect of the descriptions contained in the subsurface conveyances on the surface boundary is wrong, then his decision is clearly erroneous. While both parties noted this issue, neither cited any

**4.** Concerning findings nos. 4 and 6, if the trial court believed that the coal severance deeds conclusively established the boundary, and that the plaintiffs failed to establish the elements of adverse possession, then there appears to be a conflict between the order and the court's two prior denials of the Turners' motions for a directed verdict. Both theories of recovery, title ownership and adverse possession, were submitted to the jury. In researching this issue, we were unable to find a case where a directed verdict against a party was denied, and the party was subsequently assessed with attorneys' fees due to vexatiousness.

Concerning finding no. 5, the defendants' expert admitted that absent the metes and bounds description contained in the 1903 coal conveyances, the location of "the county road" could not be determined through survey evidence.

**5.** "Vexatious" is defined as "causing vexation; troublesome, annoying," "(of legal actions) instituted without sufficient grounds and serving to cause annoyance to the defendant." *Random House Dictionary of the English Language,* 2117 (2d ed. 1987).

authority concerning the status of West Virginia law in the area.

Our research reveals that West Virginia has never addressed the issue. A few jurisdictions have addressed their effect, usually in terms of admissibility under the hearsay exception for ancient documents. In some jurisdictions, descriptions of property contained in subsurface leases which are not referenced in the surface deed descriptions have been admissible for the purposes of interpreting a vague description in a deed. But in no case was a subsurface description determinative. It was merely another form of extrinsic evidence, used to interpret the surface description. *Hardy v. Brown*, 372 So.2d 573 (La.App. 2 Cir.1979) (a case factually identical to that of the plaintiffs in this action, except in *Hardy*, the plaintiffs offered the coal leases, which were admitted due to specific indicia of reliability of the coal lease survey); *Dyas v. Flowers*, 497 So.2d 477 (Ala.1986) (oil and gas leases admissible in boundary dispute for limited purpose of establishing possession, not ownership.) However, in *Robinson v. Peterson*, 200 Va. 186, 104 S.E.2d 788 (1958), the court held that a private survey which is not referenced in the property description of any deed in the chain-of-title is not admissible as evidence of the surface boundary in disputes between those claiming title by deed. *Cf. Bolton v. Harman*, 98 W.Va. 518, 128 S.E. 101 (1925) (A vague surface deed specifically referenced a coal lease in the description of the property. The metes and bounds description in the lease was admissible as a form of extrinsic evidence to interpret the location of the surface boundaries.)

The appellants did not act in a vexatious manner by choosing to ignore the coal leases in their case, and rather, cross examine the defendant's expert on the validity and purpose of the description. The trial judge's order which requires the appellant to pay the defendants' attorney fees was clearly erroneous. West Virginia law is not settled in the area. Therefore, the appellants could not be accused of bad faith, which requires "the assertion of a claim or defense that cannot be supported by a good faith argument for the application, extension, modification, or reversal of existing law." Syl., *Daily Gazette v. Canady*, 175 W.Va. 249, 332 S.E.2d 262 (1985).

For all the foregoing reasons, we reverse.

Reversed.